Argued at Pendleton May 5, affirmed June 17, 1919.

## HERR *v.* McALLISTER.

(181 Pac. 741.)

**Specific Performance—Parol Contract—Satisfactory Proof.**

1. Where the contract rests wholly in parol and the alleged promisor is dead, courts should demand clear and satisfactory proof of the terms of the agreement and its strict performance by the promisee.

[As to parol evidence on execution of contract, see note in 11 Am. St. Rep. 394.]

**Wills—Contract by Testator to Convey in Consideration of Services —Evidence.**

2. Evidence *held* insufficient to establish an oral contract by which testator promised to convey property to plaintiff in consideration of services in keeping house for him until his death; it appearing that she was fully compensated for her services.

From Union: JOHN W. KNOWLES, Judge.

In Banc.

The plaintiff alleges that the defendants are the heirs and devisees under the last will of D. A. McAllister, deceased, which was executed on January 11, 1913, by which he bequeathed all of his property to the defendants, except Lot 16 in Block 2 of Grandy's Second Addition to La Grande; that D. A. McAllister died in April, 1918, and that under the terms of his will his son, Reece McAllister, one of the defendants, was appointed executor of the estate. The complaint avers that during the year 1914, and for a long time

prior thereto, the testator was the owner of the above described real property in La Grande; that in November of that year he was living in the house of the said premises and the plaintiff ''was taking care of the house and home of said deceased and had been so engaged for about one year''; that about that time the deceased ''entered into an agreement with the plaintiff, and in consideration of what she had previously done for said testator and that she would look after him and care for him and make him a home thereafter during the remainder of his life, he would and did give her, the plaintiff herein, the said described premises and the house situated thereon, together with the furnishings therein, for her care, labor and attention in making him a home, which she had already done and which she was to continue to do''; that plaintiff accepted his proposition and agreed to make a home and care for him and keep house for him until his death.

It is further alleged that the deceased was to make certain improvements in and around the house, pay the taxes, keep the property in good repair during his life and furnish provisions for the plaintiff and her two children, as a part of the consideration of the agreement between them; that pursuant to the alleged contract the plaintiff entered into possession of the premises and assumed control and has remained in possession of the same continuously and was in possession at the time of the death of D. A. McAllister; that she made a home for him and in all respects kept and performed her part of the contract; that at the time the alleged agreement was made it was understood that the deceased was to make out the proper papers to give her title to the premises; and that about June 7, 1915, he did draw a codicil to his will to that

effect, but the said codicil does not appear to be attached to the will and cannot be found.

It is alleged that the agreement has been carried out by both parties, except that the deceased failed and neglected to attach said codicil so the same can be found, or if he so attached it, the same has disappeared or has failed to come within the hands of the defendants in this cause; that the defendants have refused to give, deed or allow plaintiff the property in accordance with the alleged agreement and that she was led to believe and did believe that the proper papers had been executed by D. A. McAllister, and was not aware that they had not been so executed, until after his death.

The plaintiff prays that the alleged contract be specifically performed and that she be decreed to be the owner of said lot in said block in the City of La Grande, with the house thereon and the furnishings therein.

The defendants specifically deny each and every allegation of the complaint and allege ''that the plaintiff was hired by D. A. McAllister as housekeeper and was fully paid the agreed and reasonable compensation for said service, by said D. A. McAllister, in money, board, provisions, clothing, lodging and maintenance.'' The plaintiff denies the new matter in the answer.

After a trial the court made findings of fact to the effect that the defendants are the heirs at law of D. A. McAllister, deceased, that during his life the latter was the owner of the lot in question; that there was never any agreement ''to convey said property to the plaintiff or to give the same to her, although the said D. A. McAllister at one time intended to give said real property to the plaintiff, but he later changed his mind

and decided not to give said property to her." The court further found:

"The plaintiff received a large share of her board and that of her children, and the house rent for same, from Mr. McAllister in consideration of her services, and was fully and amply repaid for her services by the support which her children and herself received at the hands of Mr. McAllister. * * That plaintiff did not enter into possession of said premises and there was no change in possession of said premises. The plaintiff came to said premises as a housekeeper and there was no exclusive possession of said premises by the plaintiff."

Based upon these findings and the conclusions of law thereon, the trial court rendered a decree that the suit be dismissed and that neither party recover costs, from which the plaintiff appeals, claiming that the court committed error in its findings of fact and that she should have a decree as prayed for in her complaint.                                              AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. R. J. Kitchen.*

For respondents there was a brief and an oral argument by *Mr. R. J. Green.*

JOHNS, J.—The deceased D. A. McAllister, familiarly known as "Bud," was an old, prominent resident of Union County and the owner of considerable property exclusive of the town lot in controversy. For some time prior to his death with his wife he had resided upon the lot, and it was their home.

On account of his wife's sickness, the plaintiff was employed by them to do the work around the house and to take care of Mrs. McAllister. To regain her health, D. A. McAllister took his wife to California,

where she died and was brought back to La Grande for burial.

The plaintiff had three boys, two of whom were twins about the age of 10 years and the other about 23 years of age. After the death of the testator's wife, the plaintiff with her minor children continued to live at the McAllister home and performed the same kind of household duties that she did prior to the death of Mrs. McAllister.

It appears from the testimony that the home was of the probable value of about $3,000, and that it had a rental value of about $25 per month. The plaintiff admits that for the period of about three months after Mrs. McAllister's death there was no specific agreement between her and D. A. McAllister concerning the home place, but contends that in November, 1914, the oral agreement was made by which "he would and did give her" the home in consideration of what she had done and what "she was to continue to do" in taking care of and keeping house for him until his death, and that she accepted the proposition and performed her part of the agreement, and that in compliance therewith "Uncle Bud" paid the water rent and light bills, and the taxes on the home property which were assessed in his name; that he failed and neglected to give her the property during his lifetime and that the defendants refuse to carry out the agreement. It appears that the plaintiff and her two minor children had a home and that "Uncle Bud" purchased and paid for at least some of the provisions which they consumed, and made some improvements upon the property. For this he received nothing but his board and some little personal care and attention from the plaintiff.

There is no claim that any deed was ever executed or that there was any written contract. The deceased executed his last will on January 11, 1915, in and by which he devised all his property to the defendants, "except Lot 16 in Block 2 in Grandy's Second Addition to La Grande, Oregon, which property is not included in this will."

There is testimony tending to show that on June 7, 1915, attorney J. P. Rusk, at the request of the deceased, prepared a codicil to the will in and by which the property in question would have been devised to the plaintiff. The original will consisted of two typewritten sheets of paper, the first of which was signed by the deceased, and the second by the witnesses. The same was in the bank across the street from the attorney's office and Mr. Rusk testfies that he delivered the codicil to Mr. McAllister and advised him that to make it effective it would be necessary to attach it to and make it a part of the will itself, but there is nothing to show or indicate that the codicil was ever attached to or made a part of the original will, or what was ever done with the codicil after it was delivered to Mr. McAllister.

While it may be true that at one time Mr. McAllister did intend that the plaintiff should have the property in question at his death, as evidenced by the preparation of the codicil, the fact remains that there is no evidence that such intention, if any, was ever carried into execution, or that the codicil was ever attached to or became a part of the original will.

The plaintiff claimed and testified that at the time of the execution of the alleged oral agreement she entered into and took possession of the property, but she does not say how or in what manner she took possession and there is no testimony of any eviction or

ouster, that there was ever any change of possession, that she had any other possession after the alleged oral agreement than she had before, that the deceased ever intended to surrender or part with his property or that he conveyed or ever did intend to convey or part with the title to the property during his lifetime. On this question the facts are very similar to those in *Brown* v. *Lord,* 7 Or. 302, 314, where this court said:

"He, to all appearances, exercised as much authority and control after as he did before the alleged contract. He maintained and supported himself and his wife out of his own means, and no one could detect any change in the condition of his affairs which would lead him to suppose that the old gentleman had ceased to be the owner of the house in which he had lived so long. We think the possession of the premises by the respondent under the alleged parol agreement is not sufficient to take this case out of the operation of the statute."

1. The only evidence of the parol contract is the testimony of the plaintiff as to an alleged conversation which she claims to have had with the deceased. The law on this class of testimony is well stated by Mr. Justice McBRIDE in *Hawkins* v. *Doe,* 60 Or. 437, 441 (119 Pac. 754, 756, Ann. Cas. 1914A, 765), on page 441 of the opinion:

"Where the contract rests wholly in parol and the alleged promisor is dead, courts should demand clear and satisfactory proof of the terms of the agreement, and its strict performance by the promisee. Such cases furnish abundant opportunity for the perpetration of those frauds which it was the object of the statute to prevent by requiring the contract to be reduced to writing."

On page 446 of 60 Or., page 757 of 119 Pac., Ann. Cas. 1914A, 765:

"Our statute requires the judge presiding at jury trials to instruct them that evidence of the oral admission of a party should be viewed with caution (Section 868, L. O. L.), and, if this is the rule as to admissions of parties living and able to explain their language and meaning, with how much greater force should it apply when the evidence is directed to the alleged declarations of one whose lips are sealed in death, and to establish a contract which the law requires to be in writing."

2. There is a mass of testimony as to the value of the services which were rendered by the plaintiff to the deceased, but when we take into consideration the fact that the plaintiff and her children had a home, that the deceased paid the taxes, the light and water bills, bought at least some of the provisions for all of them, and received nothing but his board and ordinary care and attention, we agree with the trial court that the plaintiff was fully compensated for her services. As a matter of fact we are convinced from the testimony that it was the understanding and agreement between them that one claim was to offset the other, and that there never was any contract by which the deceased promised or agreed to convey the home property to the plaintiff.

The legal contentions of plaintiff's counsel are sound, but they are not sustained by the evidence.

The decree is affirmed, without costs to either party.

                                        Affirmed.