Argued January 6, reversed and dismissed February 10, rehearing
denied March 9, 1920.

# RIGGS *v.* ADKINS.

### (187 Pac. 303.)

**Frauds, Statute of—Possession Taking Oral Contract to Convey Land
Out of the Statute.**

1. To take an oral contract to convey land out of the statute of
frauds, the necessary possession must have been taken by the pur-
chasers under and in pursuance of the contract, and it is not enough
that they were already on the land by virtue of some other arrange-
ment with the seller, as that of his employees, but there must have
been such an open and notorious change to the status of purchasers
in possession as to have attracted the notice of other people.

**Specific Performance—Oral Contract to Devise Land to Employees not
Enforceable in Absence of Showing of Change in Character of
Possession.**

2. Decedent's oral contract to devise to his employees certain land
not specifically described, on which he and the employees were living,
it being uncertain whether the land was to be devised to the employees
or to them and their children, *held* not specifically enforceable against
decedent's administrator and his heir, in the absence of showing there
was any change in possession by employees as such to possession as
purchasers or prospective devisees.

From Clackamas: JAMES U. CAMPBELL, Judge.

Department 1.

The substance of the complaint in this suit is that
James Adkins, now deceased, was the owner of some
land therein described and that for about nineteen
years prior to his death he made his home with the
plaintiffs, who are husband and wife, and about May,
1905, he agreed with them that he would convey, deed,
devise or will the realty to them to take effect on his
death, on condition that they would live on the property,
keep house and maintain a home for him thereon and
perform such other services as he might from time to
time demand. The plaintiffs claim to have performed
their part of the contract, specifying that they pro-
vided his food and board, did his laundry work for

him, nursed and cared for him during some illness, and that Nettie Riggs, one of the plaintiffs, for a period of fourteen years cooked for his logging and mill crews, consisting on an average during that time of from eight to fifteen men, and received no other consideration than the promise of Adkins at that time to convey the lands to the plaintiffs. It is said in the complaint that:

"The said James Adkins has always during said time treated the said property as the property of these plaintiffs, and plaintiffs have lived upon, improved, fenced and generally cared for said lands."

They say that Adkins often had promised that he would have papers prepared in fulfillment of the alleged agreement, but if they ever existed they have not been found or have been destroyed, and he died holding the legal title in his name. Their prayer is to the effect that the administrator and the mother of the deceased, who is his only heir, be declared to hold the land in trust for the use and benefit of the plaintiffs, and for further relief.

The making of the contract is denied by the answer. It is averred in effect that instead of Adkins living with the plaintiffs they lived with him and were paid by him for all their services besides having the use of the property and their sustenance, derived in large part from material produced on the premises. This in turn was denied by the reply. From a decree according to the prayer of the complaint the defendants appeal.                    REVERSED AND DISMISSED.

For appellants there was a brief over the names of *Mr. Earle C. Latourette* and *Messrs. C. D. & D. C. Latourette*, with an oral argument by *Mr. Earle C. Latourette*.

For respondents there was a brief over the names of *Messrs. Brownell & Sievers,* with an oral argument by *Mr. C. T. Sievers.*

BURNETT, J.—The facts appear to be that as early as 1898 Adkins was running a sawmill in Clackamas County and employed the plaintiff L. G. Riggs in the operation of the same. He afterwards engaged the plaintiff Nettie Riggs to cook for the mill-hands at an agreed price of $20 per month, together with the housing and board for herself and family, consisting of her husband and two children. They went upon the premises for that purpose and continued there for about a year, when, as the plaintiffs declare, the agreement in question was made orally. Without dispute, the husband continued to receive pay for his services in the mill. The wife says that this was sufficient for the maintenance of the family, outside of what they otherwise received from the decedent, in consequence of which she did not draw any of her wages, although she might have had them for the asking. After the alleged agreement was made, the decedent bought three other pieces of property, all of which are included in the description mentioned in the complaint. Among others, of those bought subsequently he took conveyance from the plaintiffs themselves of one of the tracts. The plaintiffs say there never was any change in the terms of the contract; yet they say he bought from them this land for which he never paid, but that they forgave him the debt, and claim this same land was to be theirs after his death.

Speaking of the contract, his wife testified that what they were to get was "the property where the mill sat, where we lived at that time." They were then living in a house near the mill already on the land when they

went there, which is not to be mistaken for the one built later and hereinafter mentioned. She was unable to state how many acres were in the tract to be conveyed, and neither witness pretends to give any definite boundary of the property they were to have. The wife was uncertain about who were to be the grantees. On that point her testimony is to this tenor:

She said, "We were to get the place." Asked, "Whom do you mean by 'we'?" she answered, "My husband, myself and my family."

"Q. And your family?

"A. Yes, sir. He intended it for a home for us all. That is what he said.

"Q. Did he say 'family'?

"A. He said 'us all.' He said when he was through with it it was ours. It belonged to us.

"Q. 'Us'?

"A. No, sir. He said, 'This belongs to you folks.'

"Q. Did he mention any names when he said 'you folks'?

"A. No, sir. I suppose we would know enough to know what he meant when he was talking direct to us.

"Q. Did he mean you and your husband and the children?

"A. He meant it was for all of us; yes, sir.

"Q. What children have you?

"A. I have two.

"Q. They are living with you, are they?

"A. One of them. That is, that is his home. My daughter is married."

The decedent at his own expense built a dwelling-house on the premises in 1907, which he and the plaintiffs and their family occupied without any apparent change in the previous arrangement whereby the plaintiffs were there as employees. He paid all the taxes and in his dealings with other people always claimed the property as his own. Indeed, the testimony on

95 Or.—27

the part of the plaintiffs themselves is that he claimed the property.

Adkins was suddenly killed on June 30, 1917, by a locomotive when he was running to catch a train. After his administrator was appointed he was told by the plaintiff in substance that Adkins owed the latter for the land bought from the plaintiffs. The plaintiff L. G. Riggs at that time also inquired of the decedent's personal representative when the plaintiffs would be required to vacate the premises now in question. The nearest approach to an averment of possession of the property sufficient to take the transaction out of the statute of frauds is the allegation of the complaint "that plaintiffs have lived upon, improved, fenced and generally cared for said lands." Without dispute, the genesis of the relation between the parties whereby the plaintiffs went upon the property is found in the relation of employer and employee. This continued throughout the course of years until the sawmill burned and part of the land had been leased to another sawmill operator. For all that would appear to an observer, the previous relation continued.

1. As stated in *Roberts* v. *Templeton,* 48 Or. 65 (80 Pac. 481, 3 L. R. A. (N. S.) 790, note), in order to take the transaction out of the statute of frauds, the necessary possession must have been taken under and in pursuance of the contract. It is not enough that the would-be purchasers are already on the land by virtue of some other arrangement. There must be such an open and notorious change of the previously existing relation as to attract the notice of other people. In 3 L. R. A. (N. S.) the Roberts-Templeton case is thoroughly annotated on this point. The subject is further examined in *Le Vee* v. *Le Vee,* 93 Or. 370 (181 Pac. 351). A substantially parallel case holding adversely

to the litigant seeking to enforce the conveyance is *Herr* v. *McAllister,* 92 Or. 581 (181 Pac. 741). There, the plaintiff claimed under an oral contract said to have been made with the then owner of the land, since deceased, whereby she was to take care of his house and home and look after him during the remainder of his life, which service she claims she performed. She had been in that employment for hire and was on the premises in pursuance thereof prior to the time the agreement was said to have been made. The owner of the realty made a will disposing of all his property except that in question. Still later, he made a codicil to his will which, however, was not produced but was described orally, whereby he bequeathed this very property to the plaintiff, but it was not attached to his will and was not found. In the respects mentioned the case there was much stronger for the claimant than in this instance, yet this court in an opinion by Mr. Justice JOHNS refused to enforce the contract.

2. In the present litigation the agreement is uncertain as to the particular tract to be transferred. It is uncertain to whom it was to be conveyed or devised, whether to the plaintiffs themselves or to them and their children. There is no sufficient showing that there was any change in the previous relation of the parties respecting the land. All they did while on the premises is quite consistent with the former agreement and does not constitute proof of taking that possession of the property which should always be shown in dealings between parties who are not related to each other by ties of consanguinity or affinity. To take property from the estate of a decedent whose mouth is closed by death and who in his dealings with other parties always asserted his ownership of the land, when there is nothing to support the claim bet-

ter than mere oral testimony which narrates events and actions easily referable to another agreement, would be to open the doors wide to possible fraud in the very face of the statute.

The pleading is deficient in that it does not directly aver that the parties took possession by virtue of the contract. In the same respect the testimony itself is wanting. The result is that the decree of the Circuit Court must be reversed and one here entered dismissing the suit, but without costs or disbursements to either party.

REVERSED AND DISMISSED. REHEARING DENIED.

BENSON, HARRIS and BENNETT, JJ., concur.