Argued at Pendleton, October 31, affirmed November 15, 1921, rehearing denied January 17, second petition for rehearing denied January 31, 1922.

## ,WOOLSEY *v.* DRAPER ET AL.

(201 Pac. 730; 203 Pac. 582.)

**Pleading—Admission of. Fact not Pleaded by Opponent Improper.**

1. Insertion in an answer in a suit for specific performance of an admission that the property involved was owned by defendant's wife was improper and a nullity, where not in response to any allegation in the complaint alleging ownership in her.

**Specific Performance—Suit Against Wife not Bound and Husband Jointly not Maintainable, Unless Plaintiff Elects to Accept Husband's Deed.**

2. In specific performance suits, where the wife having a dower right is sued jointly with her husband on a contract not binding upon her, the suit cannot be maintained against her or her husband, unless prior to the decree plaintiff elects to accept the deed of the husband alone.

**Specific Performance—Motion to Amend Held Election to Accept Deed of Husband Alone.**

3. In a suit for specific performance against a wife not bound by the contract and her husband jointly, a motion to amend the complaint by demanding a decree against the husband alone *held* an election on plaintiff's part to accept the deed of the husband alone within the rule requiring plaintiff to elect.

**Specific Performance—Defendant's Wife Without Dower Right Held not a Necessary Party.**

4. A wife residing out of the state, having no dower right in

---

2. On the question of dower right as affecting marketability of title, see note in 38 L. R. A. (N. S.) 33.

land under Section 10073, Or. L., *held* not a necessary party to a suit against her husband for specific performance.

**Frauds, Statute of—Entire Contract Need not be Contained in One Paper.**

5. In order to make a contract binding under the statute, it is not necessary that it should be all contained in one paper.

**Frauds, Statute of—Evidence Insufficient to Show Written Contract for Sale of Land.**

6. In a suit for specific performance, telegram and letters offered in evidence *held* insufficient to show a written contract between the parties.

**Specific Performance—Party not Bound cannot Compel Performance by the Other.**

7. In specific performance suits, whenever a contract is intended to bind both parties, if for any reason one of them is not bound, he cannot compel performance by the other.

**Specific Performance—Sufficient Description of Land Essential.**

8. A suit for specific performance cannot be maintained where the land to be affected by the contract is not described therein with sufficient certainty to be capable of identification.

## ON PETITION FOR REHEARING.

**Frauds, Statute of—Writings Referring to Vendor's Seven Lots Insufficient as not Showing Which of His Eight Lots were Meant.**

9. Writings referring to the vendor's seven lots in a certain town *held* not sufficient under the statute for enforcement of a contract to sell seven lots, where he owned eight lots therein, any seven of which might have been the subject of the contract.

From Malheur: DALTON BIGGS, Judge.

In Banc.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Eugene Ashwill.*

For respondents there was a brief over the names of *Mr. J. W. McColloch* and *Mr. W. W. Wood,* with an oral argument by *Mr. McColloch.*

6. Telegrams as writings to make a contract within the statute of frauds, see note in 50 L. R. A. 240.

RAND, J.—This is a suit for the specific performance of an alleged contract. The complaint alleges that the plaintiff and M. I. Draper, one of the defendants, entered into a contract whereby the plaintiff contracted to sell and convey to Draper 315.24 acres of land owned by the plaintiff in the State of Montana for the agreed price of $20 per acre, and that Draper, upon his part, agreed to deed to the plaintiff certain real property belonging to him in Ontario, Oregon, for which he was to be allowed and credited the sum of $3,500 upon the purchase price of the Montana land and that Draper assumed and agreed to pay an indebtedness secured by a mortgage upon the Montana property amounting to $1,800 and to pay the balance in money to the plaintiff.

1. The complaint alleged that Draper was the owner of the Ontario property. This was denied in the answer. To establish title in Draper the plaintiff introduced certified copies of deeds of record purporting to convey the Ontario property to the defendant M. I. Draper and also introduced evidence upon the trial showing that Draper was in possession of the property. No evidence denying ownership in Draper was offered by the defendant. From this it follows that the legal title to the Ontario property was established to be in Draper as alleged in the complaint. Inserted in the answer, following the denial of ownership in Draper of the Ontario property, is a clause containing the following words:

"Admit that the defendant Mrs. M. I. Draper is the owner of the property described."

This admission was not in response to any allegation contained in the complaint alleging ownership in her. The admission so inserted is a mere nullity

and does not constitute any allegation of ownership in the wife. It was contended that inasmuch as no reference to this admission was made in the reply the title in her stands admitted of record. The insertion into a pleading of a clause pretending to admit a fact not pleaded by the opposite party is not a proper way to plead, raises no issue, is not capable of being denied and should not be tolerated.

2. The rule is settled in this state that in suits for the specific performance of contracts for the sale of land where the wife having a right of dower in the land is sued jointly with her husband upon a contract not binding upon her and the object of the suit is to divest her of her inchoate right of dower, the suit cannot be maintained against her nor against her husband unless prior to the decree in the lower court the plaintiff elects to accept the deed of the husband alone because as to her the contract lacks mutuality. The court will not coerce the wife to perform a contract made by her husband alone, which she is not legally bound to perform: *Kuratli* v. *Jackson,* 60 Or. 203 (118 Pac. 192, 1013, Ann. Cas. 1914A, 203, 38 L. R. A. (N. S.) 1195); *Leo* v. *Deitz,* 63 Or. 261 (127 Pac. 550). This rule, however, must be limited to cases where the wife has a present existing right of dower in the lands involved.

3. A motion to amend the prayer of the complaint was filed by the plaintiff before the entry of the decree in the court below so that the wife should be decreed to have no dower right in the husband's land, and demanding a decree for specific performance against Draper alone. It appears that this motion was never called to the direct attention of the court and no order was ever made concerning it. The motion so filed will not be considered to have been waived even if the

matter was not called to the attention of the court in the absence of a showing that the plaintiff abandoned the motion, the motion being a part of the files of the suit and presumably within the knowledge of the court. This constituted an election upon the part of the plaintiff to accept the deed of the defendant, M. I. Draper, alone within the rule referred to requiring the plaintiff to elect. However, the plaintiff was not required to elect because at the trial the wife when called as witness testified that she was then and for four years prior thereto had been living at Custer, Montana. Section 10073 Or. L., provides, among other things, that—

"Any woman residing out of the state shall be entitled to dower of the lands of her deceased husband lying in this state of which her husband died seised."

4. This section was under consideration by this court in *Cunningham* v. *Friendly,* 70 Or. 222 (139 Pac. 928, 140 Pac. 989), and it was there held that a woman residing out of the estate shall be entitled to dower in lands only of which her husband died seised, citing in support thereof, *Thornburn* v. *Doscher,* 32 Fed. 811, that in partition suits a nonresident wife is not a necessary party to such a suit. Under the provisions of this statute as so construed by this court the wife being a nonresident of the state, had no right of dower in the lands involved and was not a necessary party to the suit as she had no interest therein.

On May 29, 1918, the defendant at Custer, Montana, wrote a letter to the plaintiff at La Grande, Oregon, stating that he had some income property in Ontario, Oregon, which he would like to trade to the plaintiff for the lands owned by the plaintiff in Montana. Subsequently, he wired to the plaintiff as follows:

"I have four three-room houses and five lots in one block in the best part of town. One four room house and two lots in another block. I will trade this property in on your ranch at three thousand five hundred. Come down and see it."

Plaintiff testified, and it is not disputed, that on going to Ontario the defendant Draper pointed out the Ontario property to him and that they at that time entered into a parol agreement. His testimony, as to the agreement, is as follows:

"I agreed to exchange half a section of land that I had in Custer, Montana, at $20 per acre, and I was to receive five cottages in Ontario, Oregon, for $3500 of that, and Mr. Draper was to assume a mortgage of $1,800 that was on the land there that I was turning to him and was to pay the balance in cash. There was a water right that Mr. Draper was to turn over to me, covering four of these cottages, the ones that stood together. I was to have the rent of those five cottages from that date. Mr. Draper was to have the rent of the Custer place for the year 1918."

On August 19th the defendant Draper wrote to the plaintiff a letter of which the following is a copy:

"Custer, Mont.
"Mr. R. Woolsey,
    "La Grande, Ore.
"Dear Sir:
    "Your instructions to Mr. Sharp does not jibe with our agreement. You say to Mr. Sharp that I am to pay you $6400 less mortgage $1800. Less $3500 value of my Ontario property. Now your abstract only calls for 215.24 acres at $20 per acre which I agreed to pay you per acre would be only $6305.00. I told you I would take your property at $20 per acre not $6400.00. I will guarantee the house I showed you are the ones I own in Ontario, Oregon. You must be in the habit of trading with a lot of crooks to think this. I have a water right with the property that has the four cottages on and will sent

it to you.   The banking corporation of Helena who
has a mortgage on that property says you have an
insurance on the house which is of no value to you
as there has not been any one living in the house to
my knowledge for two years.   I wish you would
transfer that policy to me.

"Please attend to this at once if I am to get this
place I want to know at once, if not, lets forget it.

"Yours truly

"M. I. DRAPER."

Other letters were introduced and from them it
appears that the plaintiff directed his lessee upon the
Montana land to pay the rent to Draper and Draper
directed his Ontario agent to pay the rent on the On-
tario premises to the plaintiff and at Draper's request
the insurance upon the buildings on the Montana
land was made payable in case of loss to Draper.
Abstracts were prepared and delivered and no ques-
tion was raised as to the sufficiency of the title to the
property of either party.   The plaintiff executed a
deed for his Montana property and delivered the same
to a bank at Custer, to be delivered to the defendant
Draper upon his compliance with the contract, but the
deed was never delivered.   On September 1, 1918, the
defendant wrote to the plaintiff a letter stating in
effect, that owing to the condition of the money mar-
ket, he was not able to raise the money necessary to
carry out the contract and stating that he would call
the deal off.

5. In order to make a contract binding under the
statute of frauds, it is not necessary that it should
be all contained in one paper.   Letters passing be-
tween the parties may supply such evidence as the
statute requires: Fry on Specific Performance, § 537.
There is, however, no such evidence in this case.

6. The telegram and letters offered in evidence
wholly fail to show any written contract between the

parties, but from them it is obvious that a parol contract was entered into for the transfer of land by each to the other. The offer made in the telegram is a mere proposal or offer to negotiate for the making of a contract and is so indefinite and incomplete in its terms that its acceptance before withdrawal could not ripen into a contract. Nor is it claimed that it was accepted, but on the contrary the plaintiff testifies, that after receiving the telegram he went to Ontario, saw the property and entered into a parol contract with the defendant. The letter of August 19th recites what Draper admits he had obligated himself to do and what he claimed the plaintiff was obligated to do, but nowhere in any writing can be found any promise or agreement by the plaintiff to do any of those things. His promises are wholly in parol and being within the statute of frauds, cannot be specifically enforced. Therefore, there is no mutuality of remedy between the parties, without which neither party can obtain specific performance against the other.

7. In cases of this kind it is an elementary rule that whenever a contract is intended to bind both of the parties, if for any reason one of them is not bound, he cannot compel performance by the other: Pom. on Specific Performance of Contracts (2 ed.), § 164, and cases cited.

8. Again, if everything appearing in the record had been included in a written contract signed by both parties, this suit would fail, because there is no sufficient description of the property to be affected by the contract to be found anywhere therein.

The rule was established in this state in the early case of *Whiteaker* v. *Vanschoiack,* 5 Or. 113, where it was held that before the court will exercise its

extraordinary jurisdiction of enforcing the specific performance,

"not only must a contract for the sale of lands be in writing, under the statute, but the lands must be certainly described in the writing, so as to be capable of identification without reference to extrinsic proof."

And again the same rule was announced in the case of *Knight* v. *Alexander*, 42 Or. 521 (71 Pac. 657), as follows:

"Before a court can decree the specific performance of a contract to convey real estate, whether in writing or parol, such contract must be certain in its terms, both as to the description of the property and the estate to be conveyed; and, unless the land is so described therein that it can be identified, specific performance will be denied: Browne, Stat. Frauds (4 ed.), 385; *Whiteaker* v. *Vanschoiack*, 5 Or. 113; *Brown* v. *Lord*, 7 Or. 302, 311; *Wagonblast* v. *Whitney*, 12 Or. 83 (6 Pac. 399); *Ferguson* v. *Blackwell*, 8 Okl. 489 (58 Pac. 647); *Preston* v. *Preston*, 95 U. S. 200 (24 L. Ed. 494, see, also, Rose's U. S. Notes). Courts do not permit parol evidence to be given to describe the property intended to be included in the contract, and then apply such description to the terms thereof."

The court then cited numerous cases illustrating the principle, and said:

"Numerous other cases of similar import are referred to in 22 Am. & Eng. Ency. Law, 963, from all of which it appears that, to entitle the vendee to a decree for the specific performance of a contract relating to real estate, the land involved must be described therein with such accuracy and clearness that it can be identified and its boundaries determined beyond the possibility of any future controversy."

See, also, *Riggs* 1. *Adkins*, 95 Or. 414, 419 (187 Pac. 303), and *Freenaughty* v. *Beall*, 91 Or. 654, 667 (178 Pac. 600).

There was no testimony tending to show part performance to take the case out of the statute of frauds. Neither party entered into possession of the real property he was trading for, or expended any money, or made any valuable improvements thereon. In fact, nothing was done by either party to change the position of the other.

The decree of the lower court will therefore be affirmed, neither party to recover costs in this court.

AFFIRMED.

Denied January 17, 1922.

ON PETITION FOR REHEARING.

(203 Pac. 582.)

DENIED.

*Mr. Eugene Ashwill,* for the petition.

*Mr. J. W. McColloch* and *Mr. W. W. Wood, contra.*

In Banc.

RAND, J.—The plaintiff asserts in a petition for rehearing that two of the reasons assigned in dismissing plaintiff's complaint are incorrect and erroneous. As one of these points is in our opinion decisive of the case, we will confine our consideration to that alone.— This proposition is stated in the original opinion as follows:

"Again, if everything appearing in the record had been included in a written contract signed by both parties, this suit would fail, because there is no sufficient description of the property to be affected by the contract to be found anywhere therein."

In order to make ourselves clear upon this point, it will be necessary to restate some of the facts upon which that holding was based.

In substance, the complaint alleged that the plaintiff and the defendants entered into an agreement by the terms of which the defendant agreed to convey to the plaintiff eight lots in Ontario, Oregon, in exchange and as part payment for one-half section of land in the State of Montana. The making of the agreement was denied by the defendants. To establish the issue thus raised, the plaintiff offered in evidence three documents consisting of one telegram and two letters, signed by M. I. Draper, the defendant; and he also testified to what he claimed was agreed to by himself and Draper at Ontario by parol. Other letters signed by Draper were offered but they contain no reference to the Ontario property and therefore, can have no bearing upon this question.

The first of the two letters referred to was written to the plaintiff by Draper at Custer, Montana, and was dated May 29, 1918, and merely stated that he had "some good income property in Ontario, Oregon," which he would like to trade to the plaintiff for the lands owned by the plaintiff in Montana and that he was going to be at Ontario in a short time and would like to show the property to the plaintiff, who was then at La Grande, Oregon. The plaintiff replied and asked Draper for the price and description of the property. No other communication passed between them until June 13th, when Draper who had gone to Ontario, sent the telegram, copied in the main opinion. Upon its receipt plaintiff went to Ontario, met Draper, saw the property, and as he testified, entered into a parol contract with him. All of the testimony which he gave as to the parol agreement is

103 Or.—8

copied in full in the main opinion. No other witness testified concerning the making or. the terms of the parol agreement.

The second letter referring to the Ontario property is also copied in full in the main opinion. An inspection of the two letters and telegram discloses, that in the first letter Draper refers to his Ontario property in these words "some good income property in Ontario, Oregon." In the other letter his reference is "Less $3500. Value of my Ontario property," and "I will guarantee the house I showed you are the ones I own in Ontario, Oregon." The description given in the telegram is:

"I have four three-room houses and five lots in one block in the best part of town. One four-room house and two lots in another block."

In his testimony concerning the terms of the alleged parol agreement the plaintiff did not mention lots at all, but he testified that he was to receive five cottages in Ontario, Oregon, and a water right covering four of these cottages and the rent of the five cottages from that date. So it will be seen that the only attempt to describe the property which Draper was to convey is to be found in the telegram and the number of lots is there given as seven and not eight as alleged in the complaint.

So if we assume for the purposes of this discussion that the telegram which was sent prior to the time when the parol agreement was made and which it is not claimed was ever accepted by parol or in writing can be used as an aid to take this contract out of the operation of the statute, and if we assume that the phrase to be found in Draper's letter of August 19th "Less $3500. value of my Ontario property," with the aid of the telegram fills the requirements of

the statute, then we have a writing signed by Draper in which he describes the property he is willing to trade as consisting of seven lots, while if we abandon the telegram as a means by which we are to determine the description of Draper's property, then we have no description at all.

Now it will be noted. in this connection that the suit is to compel Draper upon an alleged contract to convey eight lots and not seven.

Upon the trial the plaintiff offered and introduced in evidence certified copies of two deeds, one from Carlile and wife, conveying to Draper three lots in the town of Ontario, and one from Plughoff and wife, conveying to Draper five lots in Ontario. The defendant called several witnesses who testified that Draper was in possession of and was at the time engaged in renting the identical lots so conveyed to him by Plughoff and Carlile.

9. As the case stands, it is undisputed that Draper owns and is in possession of eight lots at Ontario, Oregon, and that he never signed any writing in which he referred to the sale of any number of lots, except seven, and there is no evidence of any kind, either in parol or by writing, tending to show that he ever contracted to sell eight lots. Hence if the evidence was held to be sufficient to authorize the enforcement of the alleged contract as the contract which the plaintiff attempted to prove only related to the sale of seven lots, and as the plaintiff has wholly failed to offer any proof which tends to establish what lots constitute the seven lots involved and having proved that the defendant owned eight lots, any seven of which might have been the subject matter of the contract claimed, there is no possible manner in which the court can determine from the evidence to what lots

the alleged contract referred. While if it should be found that there was a contract for the sale of eight lots instead of seven, then such contract is wholly in parol and within the operation of the statute.

On August 7th a letter to which reference has not been made herein was written by plaintiff to the Custer State Bank, stating in effect that the plaintiff was to receive the sum of $6,400 for his half section of land and a deed for eight lots at Ontario. The eight lots are fully described in the letter by numbers and blocks. In defendant's letter of August 19th above referred to, the defendant complains of plaintiff's instructions to the bank requiring him to pay $6,400 because of the fact that the acreage of the half section was less than 320 acres. Defendant's letter refers to the instructions given to the bank by the plaintiff, but does not mention or refer to plaintiff's letter at all. On July 27th the plaintiff also wrote a letter of instructions to the bank in which he made the same statement as to the amount he was to receive for his land, but containing no description of the Ontario property. There is no evidence that the defendant ever saw either of these letters or knew their contents.

Defendant's letter of August 19th makes no reference to anything except to plaintiff's instructions to settle with the defendant upon the basis of $6,400 as the price of the land. This information could have been imparted by the bank, either by telling the defendant the amount he would be required to pay or by showing him the letter of July 27th, or by showing the defendant the letter of August 7th. There is no admission contained in defendant's letter of August 19th bearing upon the question involved.

As this question is decisive of plaintiff's right to recover, it is unnecessary to allude to any of the other points raised upon the petition for rehearing, and for the reasons stated, the same will be denied, and it is so ordered.

REHEARING DENIED. SECOND PETITION FOR RE-HEARING DENIED.