Decided 23 November, 1903.

## RICHMOND *v.* OGDEN STREET RY. CO.

[74 Pac. 333.]

PLEADING—STRIKING OUT—REFORMATION OF NOTES.

1. Irrelevant and immaterial matter may be eliminated on motion, and should be disposed of before trial, to the end that the material issues may not be confused with others. For instance, in a suit to reform notes executed by trustees so that they shall be payable only out of the trust estate, allegations in the answer that plaintiffs, as trustees, had failed to account for certain trust property, that they had negligently allowed trust property to be sold on foreclosure, and that from the time of execution of the notes to the commencement of a certain action against them personally on such notes, they had made no effort to have them reformed, whereby they were estopped, were properly stricken out; the only proper issue before the court being whether the notes expressed the actual contract.

EVIDENCE OF MUTUAL MISTAKE.

2. The evidence herein shows that in reducing to writing the oral agreement of the parties there was a mutual mistake as to the legal meaning of the terms used, in consequence of which the writing does not express the actual contract made.

REFORMATION OF WRITINGS FOR MISTAKE OF LAW.

3. The statement that equity will not relieve against a mutual mistake of law is true only in a limited sense, that is, when the mistake is as to the legal effect of what has been agreed upon. Where, however, the error of law is in the legal meaning or effect of certain words employed in writing out the contract, equity will grant relief, for the writing then does not express what the parties meant.

EXAMPLE OF REFORMABLE CONTRACT—MISTAKE OF LAW.

4. It having been the intention of all the parties that certain promissory notes given by trustees should be payable out of the trust estate only, but owing to a mutual mistake as to the legal effect of the phraseology of the notes, they were so drawn as to render the trustees personally liable, the notes should be reformed in equity so as to express the true intention.

ESTOPPEL ON REFORMATION OF WRITINGS.

5. Trustees who have unintentionally executed and delivered their personal obligations instead of obligations payable out of the trust estate are not estopped from asking for the reformation of the instruments by the fact that the trust funds have been disposed of, so that the reformed notes will be worthless.

REFORMATION OF WRITINGS—LACHES.

6. Where certain notes were executed by trustees, it was the belief of the parties that the trustees were not liable thereon personally; such having been the intention of the parties. But subsequently, in an action against the trustees individually, it was determined that they were personally liable, whereupon they immediately sued to reform the notes so as to render them payable from the trust estate. *Held*, that the fact that the trustees had not taken steps to reform the notes until after the trust funds had been disposed of was no objection to the maintenance of the suit, it having been commenced within a reasonable time after the mistake became known.

From Union : MORTON D. CLIFFORD, Judge.

This is a suit by F. L. Richmond and W. T. Wright against the Ogden Street Railway Company to reform two promissory notes executed by the plaintiffs—one payable to the defendant, and the other to the Utah Loan & Trust Company, and assigned to the defendant. In April, 1899, Fred Nodine, in pursuance of an agreement between himself and one F. A. E. Starr, conveyed all his property, real and personal, to the plaintiffs in trust, to dispose of, and out of the proceeds to pay his indebtedness. Starr was to use every effort and endeavor necessary and proper for the disposition of the property and the payment of Nodine's indebtedness, and to do all the legal business connected therewith, in consideration of which he was to receive one-fifth of the surplus remaining after the payment of the debts, less the costs and expenses incident to the execution of the trust. Among Nodine's debts were two judgments —one for $1,084.84 and costs, in favor of the defendant; the other for $544.40 and costs, in favor of the Utah Loan & Trust Company ; both being subsequent in time and inferior in right to sundry mortgages and liens, amounting in the aggregate to some thirty or forty thousand dollars. The agreement between Starr and Nodine contemplated that Starr should have the management and control of the business, and attend to the sale and disposition of the property, and the payment and settlement of the indebtedness. In order to accomplish this purpose,

44 OR.——4.

and the more readily to handle and dispose of the property, Starr thought it advisable to make some arrangement with the judgment lien creditors, by which their judgments might be satisfied of record, and they look to the proceeds of the trust property for the payment of their debts. For that purpose he entered into negotiations with Judge Eakin, who was the attorney for the defendant and its assignor, the loan and trust company, which finally resulted in an agreement between them that the judgments should be satisfied of record upon the payment by Starr of the costs and one-third of the amount due thereon, and the giving of the notes or obligations of the plaintiff trustees for the balance. The amount agreed upon was accordingly paid, the notes executed and delivered, and the judgments satisfied of record. The notes as executed are in form ordinary promissory notes with the words "as trustee of Fred Nodine" written immediately after or under each signature, and on their face are the personal obligations of the trustees: *Ogden St. Ry. Co.* v. *Wright*, 31 Or. 150 (49 Pac. 975). It is alleged in the complaint that, by the terms of the contract under which the notes were executed, they were to be paid only out of the trust estate applicable thereto, and plaintiffs were not to become personally liable thereon, but that, by mutual mistake of the parties and the scrivener who drew up the instruments, they failed to express the true contract and agreement.

The answer denies the alleged mistake, and avers that the notes express the contract and agreement actually entered into, and for a further and separate defense alleges, in substance, (1) that the plaintiffs, as trustees, received large sums of money from the sale of the trust property, for which they have failed to account, and applied the same to their own use; (2) that they allowed a large amount of property to be sold on mortgage foreclosures, and now claim that they have no property or assets in their hands with

which to pay the defendant, and that, if the notes are now reformed as prayed for in the complaint, it will result in an entire loss to the defendant; (3) that from the time of the execution of the notes to the commencement of the action thereon by the defendant against the plaintiffs personally, in 1896, they made no effort to have them reformed or to protect the interests of the defendant, by reason of which they are estopped from now claiming that there was a mistake in the notes. All the new matter alleged in the answer, relating to the failure of the plaintiffs to discharge properly the duties of their trust, and the plea of estoppel was stricken out. Upon the remaining issues the cause was tried, resulting in a decree in favor of the plaintiffs, and the defendant appeals.                           AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. J. D. Slater*.

For respondent there was a brief and an oral argument by *Mr. Thos. H. Crawford*.

Mr. Justice Bean, after stating the facts as above, delivered the opinion of the court.

1. The motion to strike out was properly allowed. The question in this suit is whether the notes executed by the plaintiffs in favor of the defendant and its assignor express the true contract and agreement of the parties, and, if not, whether a court of equity will, as a matter of law, afford relief. A liability of the plaintiffs for a misapplication of the trust funds or for neglect of duty is no defense in this case, nor do the facts stated constitute an estoppel.

2. The oral testimony leaves no reasonable doubt of plaintiffs' contention that the notes do not truly express the terms of the contract and agreement of the parties. The agreement was made by Starr, acting for the trustees, and Eakin, for the defendant and its assignor. They both testify positively and unequivocally that it was understood

and agreed between them, and was a part of the contract, that the trustees should incur no personal liability, and that they thought, as a legal proposition, that the words "as trustee of Nodine," after the signatures, were sufficient to carry out that intention. The notes were drawn by Starr in Portland, and forwarded to Eakin, at Union, for the signature of the plaintiff Wright. When they were presented to Wright he refused to sign them until assured by Eakin that in doing so he would incur no personal liability. The defendant contends, however, that the contract under which the notes were executed is shown by certain letters introduced in evidence, and that these letters do not support the plaintiffs' theory. After the oral agreement and understanding between Starr and Eakin, the latter requested Starr to reduce his proposition to writing, in order that he might submit it to his clients. Starr thereupon wrote Eakin a letter explaining in some detail the condition of the Nodine estate and the necessity of taking care of certain mortgage liens, and saying:

" We are able, however, to pay a third of the principal on all these small judgments and to pay you a reasonable proportion of your attorney's fees and costs, and in full settlement of these judgments we will give you notes secured by the property in the hands of the Trustees, payable in the order in which judgments are liens upon the property. * * Upon payment of this one-third and the amount to be arranged for with yourself, and the issuance of these notes under the agreement that they were to be paid out of the Nodine property, we would expect a release of these judgments so as to free the land."

Upon receipt of this letter, Eakin prepared and forwarded letters to the defendant and its assignor, the Utah Loan & Trust Company, and other of his clients holding judgments against Nodine, wherein he explained that Nodine had made arrangements with Starr under which he had deeded his land and transferred all his personal property

to Wright and Richmond in trust for the payment of his debts; that no money had yet been realized on the property, but there was a prospect of its sale in small tracts; that he (Starr) "cannot pay the whole of the judgments at this time, but proposes to pay us now in cash one-third of the judgments and the balance as soon as it can be made out of the land, then they want to give the note of the trustees for the balance of the judgment, payable out of the land as soon as the same is realized upon, the property of course standing in the hands of the trustees as security for the notes"; that he had talked the matter over with Starr, had his proposition in writing, and thought it was the best that could be done under the circumstances, but did not want to close the transaction without the consent of his clients. Eakin was advised by the defendant company that his explanation of the matter had been reviewed, and that it agreed "to the same with the understanding that you will remit a third cash and two-thirds in notes of Nodine's trustees." The Utah Loan & Trust Company asked for further information, which was given by Eakin at some length, whereupon it also advised the acceptance of Starr's proposition. Now, as we read and interpret this correspondence, it does not conflict with the oral agreement between Starr and Eakin. It is nowhere said or intimated that the notes to be given by the trustees were to be their personal obligations, but it is expressly stated in Starr's letter to Eakin that they were to be secured by, and payable out of, the property. Eakin so explained the matter to the defendant and its assignor, and so we conclude that the allegations of the complaint and the contention of the plaintiffs are supported by the testimony, and that there is and was a mistake made by the parties in reducing their contract to writing. It only remains to be seen whether a court of equity will reform the instruments so as to conform to the actual contract.

3. One of the well-recognized and firmly established jurisdictions of a court of equity is to reform written contracts when there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake. If, therefore, a promissory note or other written agreement omits or contains terms or stipulations contrary to the agreement and intention of the parties, a court of equity will, upon a proper showing, reform it so as to make it conform to the actual contract. It is sometimes said that a mistake of law is no ground for equitable relief, but this rule only applies to cases where the contract, as entered into, speaks the true agreement of the parties. In such a case equity will not ordinarily reform the contract merely because one or both of the parties were mistaken as to its legal consequence, but where, through a mistake of the parties or the draftsman, there is a failure to express the actual contract of the parties as contemplated, owing to the use of inapt words, or where the legal effect of the terms employed by the parties in putting their contract in writing results in an agreement different from the one really entered into, a court of equity will reform the writing so as to effectuate the intention of the parties, even though the mistake was one of law. "Decisions of undoubted authority," says the Supreme Court of the United States in *Walden* v. *Skinner*, 101 U. S. 577, "hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the particu-

lar branches of equity jurisdiction, and if the instrument intended to execute the agreement be, from any cause, insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his engagement; and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the terms of it and the manifest intention of the parties." And Mr. Pomeroy says (2 Eq. Jur. § 845): "If an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect.  If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere, with the appropriate relief, either by way of defense to its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact.  In this instance there is no mistake as to the legal import of the contract actually made, but the mistake of law prevents the real contract from being embodied in the written instrument.  In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." See, also, to the same purport, *Stockbridge Iron Co.* v. *Hudson Iron Co.* 107 Mass. 290; *Green Bay & M. Canal Co.* v. *Hewitt,* 62 Wis. 316 (21 N. W. 216, 22 N. W. 588); *Woodbury Sav. Bank* v. *Charter Oak Ins. Co.* 31 Conn. 517; *Wisconsin M. & F. Ins. Co. Bank* v. *Mann,* 100 Wis. 596

(76 N. W. 777); *Williams* v. *Hamilton*, 104 Iowa, 423 (73 N. W. 1029, 65 Am. St. Rep. 475, and note).

There are, therefore, two well-defined classes of mistakes common to parties entering into contracts : (1) A mistake in law as to the legal effect of the contract actually made by them ; and (2) a mistake in law in reducing to writing the contract, whereby it does not carry out or effectuate the intention of the parties. In the former the contract actually entered into will seldom, if ever, be relieved against, unless there are other equitable features calling for the interposition of the court. In the second class the mistake is not in the contract, but terms are used or omitted which give the instrument a legal effect not intended by the parties, and different from the contract actually made; and here equity will always grant relief, unless barred on some other ground.

4. Now, in the case at bar, the mistake falls clearly within the latter rule. The contract as made was definite and certain, but a mistake was made in reducing it to writing. The notes for the balance due upon the judgments were, under the contract, to be payable only out of the trust estate, without any personal liability on the part of the trustees. In drawing the notes, Starr thought he was accomplishing this result; but, through a mistake as to the legal effect of the terms used, the notes were drawn so as to render the trustees personally liable thereon, and did not, therefore, carry out or effectuate the contract as made. A part of the contract was by mutual mistake omitted from the writing, and the notes should be reformed accordingly.

5. It is argued that, because the trust funds have been disposed of by the trustees, the court should not now reform the notes to make them conform to the actual contract. If the trustees have violated or been unfaithful to their trust, they may be held liable in a proper proceeding

therefor, but it would afford no reason why these notes should not be made to conform to the actual agreement.

6. Again, it is said that plaintiffs ought not to prevail in this suit, because they took no steps to reform the contracts until after the trust funds had been disposed of. At the time the notes were executed, and until the rendering of the decision in *Ogden St. Ry. Co.* v. *Wright,* 31 Or. 150 (49 Pac. 975), it was supposed that the notes, as drawn, created no personal liability against the trustees, and consequently they saw no reason for attempting to reform them. After it was judicially determined, however, that the notes were, on their face, the personal obligations of the trustees, this suit was immediately commenced for a decree making them conform to the actual agreement.

It is also insisted that, under the decree of the court below, the defendant is enjoined from instituting any action or proceeding against plaintiffs on the notes so reformed, because of a misapplication of the trust funds. We do not understand such to be the effect of the decree. It restrains the defendant from prosecuting an action or proceedings on the notes as executed, and does not deprive it of any remedy it may have to recover on the notes as reformed, or against the trustees for neglect of duty. The decree of the court below is affirmed.        Affirmed.

---

Decided 30 November, 1903.