Argued at Pendleton October 27, affirmed December 2, 1924, re-hearing denied January 27, 1925.

## FRANCES V. SMITH ET AL. *v.* HENRY CRAM ET AL.

(230 Pac. 812.)

**Abatement and Revival—Parties—Transfer of Property Involved in Suit to Collect Note and Foreclose Mortgage, not Abatement of Suit or Cause for Joining Transferees.**

1. Defendants' transfer of property, involved in suit to collect note and foreclose mortgage to bank, between filing of second and third amended complaints, did not abate suit, nor require plaintiff to join bank as necessary party defendant, in view of Section 38, Or. L.

**Evidence—Witness may Testify to Intention of Parties Regarding Mortgage and Note When in Issue.**

2. Though witness may testify to observations but not impressions, under Section 727, subdivision 1, Or. L., when fact in issue is intention of parties regarding note and mortgage, witness in position to know may testify to such intention as to any other observed fact.

---

1. See 1 R. C. L. 55.
2. See 10 R. C. L. 568, 946.

Mortgages—Testimony of Witness as to Issue as to What was Done in Preparing Mortgage, Held Admissible in Foreclosure Suit.

3. In suit on note and to foreclose and reform mortgage, testimony of attorney preparing mortgage as to what was done, including instructions from parties, being fact in issue, and showing disposition of loaned money, was admissible in view of Sections 707, 713, subdivision 2, and Sections 717, 727, Or. L.

Reformation of Instruments—Oral Evidence Admissible in Reformation Suit.

4. Under Section 713, subdivision 1, Or. L., in suit to reform a mortgage, oral evidence admissible to show mortgage agreement.

Reformation of Instruments—Burden on Plaintiff to Prove Mistake, and Mutuality Thereof, Convincingly and Satisfactorily.

5. In reformation suit, burden of proving mistake and mutuality thereof is on plaintiff, and must be shown convincingly and satisfactorily, but not beyond reasonable doubt.

Reformation of Instruments — Rule Stated as to Materiality of Whether Mistake One of Fact or Law.

6. If agreement is as parties intended, and parties were simply mistaken as to legal effect, contract will not be reformed; but where writing does not express agreement, whether mistake is one of fact or law is immaterial.

Reformation of Instruments — Evidence of Mutual Mistakes Held Admissible as Oversight, Against Intention of Parties.

7. Evidence of mistakes consisting in omission of seals and omission of signature of party thereto as trustee, *held* admissible, in suit to reform mortgage, as omitted by oversight, and against the intention of the parties.

Reformation of Instruments — Ignorance of Party of Omission of Seals and Signature as Trustee, Held not to Preclude Reformation.

8. That trustee, signing mortgage to secure loan for father, was ignorant of omission of seals and of his signature as trustee, and left all arrangements for loan to his father, *held* not to preclude reformation of mortgage to correct such errors.

Reformation of Instruments—Addition of Second Signature of Party as Trustee and Certain Seals Omitted by Scrivener's Mistake, Held Properly Allowed.

9. Reformation of mortgage to add second signature of certain party as trustee, and certain seals omitted by mistake of scrivener, *held* properly allowed to conform to intention of parties.

---

4. See 23 R. C. L. 366.

5. Mutual mistake as ground for reformation of instruments, see notes in 3 Ann. Cas. 444; 19 Ann. Cas. 343. See, also, 23 R. C. L. 367.

6. Relief from mistake of law as to effect of instrument, see note in 28 L. R. A. (N. S.) 785. See, also, 23 R. C. L. 322.

7. See 23 R. C. L. 337.

**Trial—Grant of Application to Reopen Case Largely Discretionary.**
10.  Where both parties applied to reopen case and introduced further testimony, grant thereof was largely discretionary.

See 1 C. J. 144; 22 C. J. 215, 527, 535; 27 Cyc. 1615 (1926 Anno.); 31 Cyc. 473 (1926 Anno.); 34 Cyc. 913, 914, 933, 935, 948, 980, 981, 983; 38 Cyc. 1360.

From Crook: T. E. J. DUFFY, Judge.

In Banc.

This suit was instituted to collect a note for the principal sum of $31,000, accrued interest, and $2,500 alleged as reasonable attorney's fees; and to foreclose a mortgage on real property given to secure said note. The third amended complaint also prays for the reformation of the note and mortgage. The plaintiffs sought to reform the note by having the name of James Cram, Jr., as trustee, added to the note and to reform the mortgage by affixing seals to the names of Henry Cram and Mabel Cram, and by requiring the signatures of James Cram, Jr., as trustee, and his wife Mabel Cram. The defendant Henry Cram is the father of the defendants James Cram, Jr., Lynn Cram and Hazen Cram. Dora Cram is the second wife of the defendant Henry Cram and is not the mother of the said sons of the defendant Henry Cram. On the thirteenth day of February, 1918, the said Henry Cram made, executed and delivered to his said son James Cram, Jr., a quitclaim deed to an undivided two-thirds interest in and to the land involved in this suit. At that time, and for a long time prior thereto, the said Henry Cram was the owner of said real property and had theretofore, with his wife Dora, executed several mortgages against said real property, to wit, September 14, 1911, in

10.  See 26 R. C. L. 1042.

favor of T. M. Baldwin to secure three promissory notes; one for the principal sum of $3,500, one for the principal sum of $5,000, and another for the principal sum of $1,500; March 17, 1917, in favor of Manford Nye to secure a note for the principal sum of $640.43; October 26, 1915, in favor of The First National Bank to secure three promissory notes for the principal sum of $4,000, one for the principal sum of $1,000, and another for the principal sum of $5,000; October 12, 1913, in favor of H. F. Powell, to secure a note for the principal sum of $14,580. All of these mortgages were valid subsisting liens against said real property at the time that the quitclaim deed, before mentioned, was executed and delivered by said Henry Cram to James Cram, Jr. After the said quitclaim deed was executed and delivered as aforesaid, the said Henry Cram and James Cram, Jr., entered into an agreement whereby the said James Cram, Jr., declared that he held title to the undivided two-thirds interest in said real property as trustee in behalf of himself and his two brothers Lynn Cram and Hazen Cram, who were minors. This declaration of trust was not recorded, and was not known to be in existence by anyone except the parties thereto, the said Henry Cram and James Cram, Jr., until the taking of testimony in this suit. On the fifteenth day of October, 1918, the said Henry Cram and Dora Cram executed and delivered to the said James Cram, Jr., trustee, a warranty deed conveying to him an undivided three-fourths interest to the same real property described in said quitclaim deed. Said warranty deed contains these provisions:

"It being understood and agreed that the grantors reserve an undivided one-fourth interest in all of said property and that the said James Cram, Jr., Lynn Cram and Hazen Cram hereinafter named shall

each own an equal interest in said undivided three-fourths interest therein when said Lynn Cram and Hazen Cram shall reach the age of majority and until such time the said James Cram Jr. to hold the title for their interests in trust for their, with power to dispose of or mortgage the same during said minority.''

On the thirteenth day of February, 1918, when said quitclaim deed was executed, the said Henry Cram and his wife Dora Cram were attempting to adjust their marital troubles. The quitclaim deed was executed because the defendant Dora Cram refused to execute a warranty deed conveying to the sons of her husband, the said James Cram, Jr., and his brothers, the undivided three-fourths interest, excepting upon conditions to which the defendant Henry Cram was not willing to submit. For that reason, the quitclaim deed was executed and delivered by the said Henry Cram to the defendant James Cram, Jr., to a two-thirds interest in said real property. Henry Cram testified that he understood at the time he could not convey more than two-thirds interest in the property without his wife joining with him in the deed, which she refused to do at that time. Later, the defendants Henry Cram and Dora Cram adjusted their differences, and as a result, the warranty deed, above referred to, was executed and delivered by the defendant Henry Cram and his wife Dora to James Cram, Jr., as trustee.

On or about January 28, 1919, the defendant Henry Cram arranged with C. Sam Smith for a loan of $31,000, for the purpose of paying off the mortgage indebtedness set out above. The negotiations leading up to this loan were conducted by the said Henry Cram as though he was the owner of the property. Henry Cram did not consult James Cram, Jr., or

either of the two other sons, with regard to making said loan or executing a mortgage against the real property, in which he had conveyed an undivided three-fourths interest to James Cram, Jr., and his two minor brothers. After the loan was agreed to, Henry Cram and his wife Dora Cram, and at his request, James Cram, Jr., and his wife Mabel went to the office of Mr. M. R. Elliott, an attorney at law, who had been engaged in the practice of law at Prineville, Oregon, for twenty years, where these transactions were conducted for the purpose of executing the note and mortgage for the sum of $31,000 in favor of C. Sam Smith. James Cram, Jr., took no part in the negotiations leading up to the loan, nor in the preparation of the mortgage, and simply signed as he was directed by the attorney, who represented both the mortgagee and the mortgagors in that transaction. The mortgage was prepared on a form in common use in this state. It had the word "seal" in parentheses at the end of the two dotted lines. There were four parties to sign the mortgage. Henry Cram wrote his name above the dotted lines and the word "seal" was not added thereto, and Mabel Cram wrote her name below the dotted lines without affixing the word "seal." Dora and James Cram, Jr., signed their names on the two dotted lines in front of the printed word "seal" in parentheses. James Cram, Jr., did not sign the word "trustee" after his name and signed the mortgage only once, nor was he described as a party to said mortgage in his capacity as trustee.

The third amended complaint, in addition to praying for judgment for the amount due on said promissory note and the foreclosure of the mortgage, also prayed that the note and mortgage be reformed as

stated above. The defendants Lynn Cram and Hazen Cram, and James Cram, Jr., as trustee, and Mabel Cram, his wife, contested the prayer of the plaintiffs to have the note and mortgage reformed as aforesaid. They contended that said mortgage was a valid lien against the interest of Henry Cram and James Cram, Jr., only, did not subject the undivided one-half interest of the said Lynn and Hazen Cram to the lien of said mortgage; and that James Cram, Jr., was not liable on either the note or mortgage in his capacity as trustee. The Circuit Court found in favor of the plaintiffs by requiring the omitted seals to be affixed and James Cram, Jr., as trustee, made a party thereto, decreed the mortgage to be reformed, and entered a judgment and decree accordingly. From this judgment and decree the defendants James Cram, Jr., as trustee, and Mabel Cram, his wife, Lynn Cram and Hazen Cram appeal.

After the second amended complaint had been filed and before the third amended complaint was filed, the defendants conveyed their interest in the land involved to the Bankers Discount Corporation. Thereafter, the defendants Lynn and Hazen Cram filed a motion "for an order compelling plaintiff to make the Bankers Discount Corporation a party defendant on the ground that said Bankers Discount Corporation was a necessary party." This motion was denied and a motion was then made for an order staying proceedings until the Bankers Discount Corporation should be served with the third amended complaint and made a party defendant. After the execution and delivery of said mortgage, the said C. Sam Smith died, and the plaintiffs are his successors in interest thereto.

The appellants assign as error the denial of the two said motions; the admission of certain testimony, the denial of a motion to strike out that certain testimony, the refusal of the court to grant a nonsuit when plaintiffs rested, the order of the court permitting plaintiffs to reopen the case and introduce further testimony, including specified exhibits, and in making certain findings of fact based upon the evidence objected to, and rendering a decree reforming the mortgage as stated above, and foreclosing the mortgage against more than a one-half interest in the real property described therein. These assignments will be considered in the opinion.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the name of *Messrs. Winter & Maguire,* with an oral argument by *Mr. W. H. Maguire.*

For respondents there was a brief and oral argument by *Mr. Willard H. Wirtz.*

COSHOW, J.—1. It was not error to deny the two motions mentioned in the statement above. The suit did not abate by reason of the transfer of the interest of the defendants to the Bankers Discount Corporation: Or. L., § 38; *Oregon Auto-Dispatch* v. *Cadwell,* 67 Or. 301, 303, 304 (135 Pac. 880), and cases therein cited.

2. The principal contention of the appellants is the error of the court in admitting the testimony regarding the agreement between the parties to the mortgage at the time it was executed. Appellants state their principal contention on this appeal as follows:

"A witness cannot state impressions made on him by oral statements, his inference as to whether the

statements of parties resulted in a contract, or of whether there was an understanding between them on a given point, or his own understanding as to what the contract was.''

C. Sam Smith, the mortgagee, departed this life prior to the trial. The witness, whose testimony was objected to, and upon which the plaintiffs relied, testified that he could not repeat any words that were used by either of the parties; that he remembered that his instructions were to treat this mortgage as he had theretofore testified, and that he received the instructions from both the mortgagors and mortgagee; that his instructions were to draw this mortgage, giving Mr. Smith a first mortgage on all lands described covering the title and interest of all parties signing it; that he had no conversation with James Cram, Jr., other than to tell him where to sign and ask him if he acknowledged the instrument; that James Cram, Jr., was present with his father, the defendant Henry Cram, while instructions were given to him; the mortgagor, the said C. Sam Smith, also being present. The prior testimony of this witness was to the effect that he was instructed by the parties to draw a mortgage on this property covering all of the interests of the parties executing it; that his instructions were to draft a mortgage covering the property, including the whole of the property and all the title and interest; that the seals were omitted by inadvertence; that he did not consider it necessary to describe James Cram, Jr., as trustee, or have James Cram, Jr., sign the mortgage as trustee, and that he deemed it unnecessary for James Cram, Jr., to sign the mortgage more than once. The objection to this testimony is that it is hearsay and an attempt on the part of the witness to

113 Or.—21

simply give his impression or understanding. We have carefully considered all of the authorities submitted by the appellants, but do not find them to sustain their contention. It is a fundamental rule that a witness must testify to his observation and not to his impressions. This rule does not apply when the fact in issue is the intention of the parties. A witness, who is in a position to know, may testify about the intention of the parties to an agreement to the same effect as to any other fact which may come to his observation: Or. L., § 727, subd. 1; 22 C. J. 535, note 32; 1 Wigmore on Evidence, 756, § 661; 3 Wigmore on Evidence, 2610, § 1964; 23 R. C. L. 365, 366, §§ 65, 66.

3. In the instant case, the witness was the attorney who drafted the mortgage. All of the parties to the mortgage were present. He received his instructions from both the mortgagor Henry Cram and the mortgagee, C. Sam Smith, in the presence of the other mortgagor, James Cram, Jr. What was done, including the instructions to the attorney, was the precise fact in issue. The instructions given the attorney were clearly admissible: 34 Cyc. 981, note 20. The testimony of the witness was knowledge acquired by him in the course of his employment and was therefore admissible: 22 C. J. 215, § 174, note 48; 34 Cyc. 981, note 20.

"A witness' understanding of a statement or conversation may, however, be admissible where the facts can be presented in no other way or where the facts cannot be placed before the jury so that they themselves can draw a reasonable inference, provided the witness has stated all the facts he can. The same is true where it is apparent that he uses the word 'understanding' as synonymous with 'agreement,' or where the understanding is a fact independently relevant." 22 C. J. 516, § 603.

The evidence admitted showing the disposition of the money loaned by the said C. Sam Smith, who was the predecessor in interest of the plaintiffs, and the other circumstances concerning the loan, were properly admissible. Or. L., §§ 707, 713, subd. 2, and § 717.

4, 5. This suit being one for the reformation of a valid instrument, oral evidence was admissible for the purpose of proving the agreement made: Or. L., § 713, subd. 1; 5 Pomeroy's Equity Jurisprudence (2 ed.), 4739, § 2013; 34 Cyc. 981–984. The burden of proof is on the plaintiffs to prove the mistake complained of and that it was mutual. It is not necessary to prove the mistake and its mutuality beyond a reasonable doubt, but the evidence should be convincing and satisfactory: *Taylor* v. *Miles,* 19 Or. 551 (25 Pac. 143); *Lewis* v. *Lewis,* 5 Or. 174; *Newsom* v. *Greenwood,* 4 Or. 119, 123, modifying *Shively* v. *Welch,* 2 Or. 288, 290; *Archer* v. *California Lumber Co.,* 24 Or. 341 (33 Pac. 526); 34 Cyc. 984, note 34.

6. We do not deem it material to determine whether or not the mistake was one of fact or of law. That is immaterial. Equity will correct either where the mistake was mutual and the contract as written does not correctly state the agreement between the parties. If the agreement is as the parties intended it should be, and the parties were simply mistaken as to the legal effect, the contract will not be reformed. But where the writing does not express the agreement of the parties, it is immaterial whether the mistake is one of fact or of law: 2 Pomeroy's Equity Jurisprudence (4 ed.), 1722, § 845; *Richmond* v. *Ogden Street Ry. Co.,* 44 Or. 48, 54 (74 Pac. 333); *Walden* v. *Skinner,* 101 U. S. 577, 583 (25 L. Ed. 963, see, also, Rose's U. S. Notes).

7, 8. Two mistakes are sought to be corrected in this suit, namely, the omission of the seals, and the omission of the signature of James Cram, Jr., as trustee. Both occurred by an oversight by all of the parties, including the attorney representing all of the parties. In this connection, it is our opinion that the evidence establishes, beyond any doubt, that the intention of all of the parties was to mortgage to the said C. Sam Smith the entire estate in the real property described in the mortgage. The defendant Henry Cram, who is the father of the other owners, conducted all of the negotiations. He conveyed the land to his sons for the consideration of one dollar, love and affection. The title to the land at that time was encumbered with mortgages, all of which were past due and exceeded the amount of the loan by Smith. That loan was contracted for the purpose of clearing the title to the land of the mortgage indebtedness. Both Henry Cram and James Cram, Jr., were witnesses in behalf of the appellants. Henry Cram never denied or refuted the testimony of Mr. Elliott in any particular. If there had been any intention to limit the mortgage to his own interest and that of his son James Cram, Jr., amounting to an undivided one-half interest he would have so testified: Jones on Evidence (3 ed.), Civil Cases, § 170. The fact that he did not so testify tends to corroborate the testimony of Mr. Elliott. The defendant and appellant James Cram, Jr., seems not to have taken an active part any more than to have signed on the dotted line under the direction of Mr. Elliott. He doubtless depended upon his father entirely. The fact that he was ignorant of the mistake, as well as to have left the entire matter of arranging for the loan to his father, will not prevent a court of equity

from correcting the mistake: See notes to *Page* v. *Higgins,* 150 Mass. 27 (22 N. E. 63, 5 L. R. A. 152, 158). Doubtless, James Cram, Jr., would have signed his name to the mortgage again as trustee if he had been directed to by the scrivener. We cannot escape from the conclusion that it was the intention of all of the parties to the mortgage to convey to the mortgagee the entire estate in the land including the trust estate.

9. The appellants urge, with much skill and learning, that there was no agreement for the trustee to execute the mortgage in that capacity and that a court of equity cannot supply that agreement. In their argument and authorities submitted, however, they overlook the fact that the trustee was authorized by the deed creating the trust to mortgage the property, and that in executing the mortgage the trustee was not doing anything in violation of his trust, but was actually executing the trust according to its terms. All of the mortgages encumbering the title to the land, when it was conveyed to James Cram, Jr., trustee, were past due. These mortgages could have been foreclosed at any time. James Cram, Jr., as trustee, received that title subject to those mortgages. The grantor was his father who was interested in the welfare of his sons and arranged this loan for the purpose of paying off the mortgage indebtedness and having the time extended for canceling the debt. He could not have conveyed the land so as to relieve it from the lien of the mortgage indebtedness. It would be inequitable and unconscionable to allow the plaintiffs, who have inherited the note secured by the mortgage given to C. Sam Smith, to suffer a probable loss by reason of a mistake of the scrivener who drew the mortgage and was acting

for all of the parties thereto. The testimony of the scrivener as to the intention of the parties is not disputed. It is corroborated by the mortgage itself, which purports to convey the entire estate in the land, by the conduct of the parties in using the money loaned by the mortgagor to pay off the overdue liens then against the property, and by the silence of the mortgagors in regard thereto. This money was all paid out by the bank for the parties in cancellation of said mortgage indebtedness. There is no doubt at all that the mortgagee C. Sam Smith believed when he made the loan of $31,000 to the defendants Henry Cram and James Cram, Jr., that he was being secured for that loan by the entire estate in the land. We entertain no doubt that the defendant Henry Cram and James Cram, Jr., intended to convey all of the estate including the trust estate, for the purpose of securing that loan. The arrangement of giving the mortgage to the said C. Sam Smith for the purpose of paying the overdue mortgage indebtedness was for the benefit of the trust estate. It was so accepted and received by defendants. The reformation prayed for to the extent of adding the name of James Cram, Jr., as trustee, to the mortgage was one which a court of equity has power to make: 34 Cyc. 934, § 4; 23 R. C. L. 332, 333, §§ 23, 24. It was proper to require seals to be affixed: 23 R. C. L. 337, § 30; 34 Cyc. 933.

The court did not err in refusing to grant a motion for a nonsuit against the plaintiffs. There was evidence of the intention of the parties to frame the mortgage as contended for by the appellants. The only controversy between the appellants and the respondents was whether or not it was the intention of the mortgagors to execute and deliver a mortgage

and the intention of the mortgagee to receive a mortgage against the entire estate of the mortgagors in and to the real property, including the estate therein held by the defendant James Cram, Jr., as trustee, for his two minor brothers.

10. It was not error for the court to reopen the case and receive further testimony. Both the plaintiffs and the defendant applied for permission to open the case and introduce further testimony. The matter rested largely in the discretion of the trial court. The object of a suit in equity is always to determine the equity between the parties plaintiff and defendant. The record in this suit clearly shows. the court did not abuse his discretion when he opened the case and permitted both parties to introduce further testimony.

It follows, logically, that the findings of fact made by the court are correct. These findings are based upon the testimony objected to and which was held to be admissible. The court did not decree the reformation of the note by compelling the defendant James Cram, Jr., to sign the note as trustee. The *cestuis que trustent* were not made personally liable for the indebtedness. The decree did not include a personal judgment against said *cestuis que trustent*. It operates simply to foreclose their interest in the real property described in the mortgage, and provides for the sale thereof. We find no reversible error in the record. The decree appealed from is affirmed.

AFFIRMED.    REHEARING DENIED.

RAND, J., concurs in the result.