Argued May 4, reversed with instructions May 20, petition
for rehearing denied September 15, 1953

## WEATHERFORD *v.* WEATHERFORD ET AL.

257 P. 2d  263
260 P. 2d 1097

*Wilber Henderson,* of Portland, and *John F. Kilkenny,* of Pendleton, argued the cause for appellants. With them on the briefs were Raley, Kilkenny & Raley, of Pendleton.

*William F. Bernard,* of Portland, argued the cause for respondent. On the brief were Collier, Bernard, Bernard & Edwards, and Norman N. Griffiths, all of Portland.

Before LATOURETTE, Chief Justice, and LUSK, BRAND, and TOOZE, Justices.

## LATOURETTE, C. J.

This is a suit for specific performance of an alleged option which plaintiff Marion T. Weatherford claims was given to him by his brother, the defendant H. R. Weatherford, to purchase what is known as The Mor-

rison Field, containing 320 acres in Gilliam county. From a decree in favor of plaintiff, defendants appeal.

It is alleged in the complaint that prior to August 31, 1948, the plaintiff, Marion T. Weatherford, and defendants, H. R. Weatherford, Frank M. Weatherford and Barbara Athearn, brothers and sister, jointly owned the property above described; that on said date the said parties entered into an agreement whereby they mutually promised and agreed upon a division of their properties, including. the above-described parcel, owned jointly by them; that under said agreement the defendant H. R. Weatherford became sole owner of the above-described parcel, and it was further mutually promised among them that in the event either Frank M. Weatherford, H. R. Weatherford, Marion T. Weatherford or Barbara Athearn, should decide to sell any part or all of the property distributed to any one of them under the aforementioned division, then any of the others of them would have the option to purchase the piece decided to be sold at a price comparable to any bona fide offer; that subsequently the defendant H. R. Weatherford purported to transfer his interest in said property to Edith M. Snell and David L. Lemon and Margaret S. Lemon, without giving plaintiff the privilege of exercising such option; and that said Edith M. Snell and the Lemons purchased the property with notice and knowledge of such option.

The defendants answered, and, among other things, alleged that on October 26, 1948, plaintiff, by warranty deed, conveyed to defendants H. R. Weatherford and Edith M. Weatherford, his wife, said above-described property, and that by reason of the execution of such deed, plaintiff is estopped from claiming that defend-

ant H. R. Weatherford had no right to convey said real property.

Plaintiff, by his amended reply, admits the execution of the aforesaid warranty deed, and by his first, further and affirmative amended reply, inter alia, alleges that the execution of the aforementioned deed and the granting of the option were one transaction, and that one of the considerations for the deed was the granting of the option. And, as a second affirmative amended reply, plaintiff alleges that the exclusion and omission of the option in the aforesaid deed was a result of mutual mistake between the parties and that such mistake did not arise from the gross negligence of the plaintiff. By such reply plaintiff, in the alternative, seeks reformation of the deed.

There is no question that the plaintiff, on August 31, 1948, had an option to purchase from defendant H. R. Weatherford the property involved in this case. However, in our opinion, the decision of the case turns upon the legal effect of the warranty deed executed on October 26, 1948, by the plaintiff to defendants H. R. Weatherford and Edith M. Weatherford, his wife.

■ Since the execution of the warranty deed was subsequent in date to the granting of the option, in legal effect the deed extinguished the option unless it could be legally shown that one of the considerations of the deed was the granting of the option or that there was a mutual mistake in the execution of the deed, or both.

The deed recites a consideration "of the sum of Ten ($10.00) Dollars." The legal question presented is whether or not parol or extrinsic evidence may be admitted to contradict a substantial and contractual provision of the deed so as to amplify a monetary consideration.

Section 2-406, OCLA, provides that the following presumption is deemed conclusive:

"* * * * *

"(3) The truth of the facts recited from the recital in a written instrument, between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration;

"* * * * *"

■ It is the law that the above consideration exemption does not apply where the grantor seeks to contradict the consideration recited in the instrument by parol or extrinsic evidence that tends to defeat the operation, or lessens the effect, of the deed, or engrafts into the instrument an additional executory or contractual consideration.

In *Marks v. Twohy Bros. Co.*, 98 Or 514, 194 P 675, we said:

"A recital in a written instrument as to the payment of the consideration is merely in the nature of a receipt, and may be contradicted or explained by parol or extrinsic evidence, unless such contradiction would have the effect of rendering nugatory some substantial and contractual provision of a valid written instrument. In the case of a conveyance like the one under consideration from plaintiffs to the Ochoco Irrigation District, where the grantors, or one claiming under them, attempt by contradicting the consideration clause, to defeat the operation of the deed, or to lessen the force or effect thereof, or to incorporate therein a reservation of a right or interest in the property conveyed, which reservation is not enumerated in the conveyance, such parol or extrinsic evidence is inadmissible to vary, contradict, enlarge or diminish such deed. * * *

"* * * * *

"The considerations recited in the conveyance in question are monetary on the one side and contractual on the other. The consideration moving from the grantee to the grantors is purely monetary. That moving from the grantors to the grantee is contractual; it is a conveyance of all the right, title, and interest of the grantors in the Table Land Ditch. If the grantors, under the guise of varying the monetary consideration, can ingraft new terms into the instrument by parol evidence, and reserve to themselves the right to the use of the Table Land Ditch during the season of 1918, they could in the same manner reserve to themselves the right to its use for a longer period of five or fifty years, or defeat the purpose of the conveyance.

"Stated in general terms, a purely money consideration, mentioned in a written instrument, which is complete upon its face, cannot be amplified by parol evidence so as to ingraft into the instrument an additional executory or contractual consideration. Where the written instrument appears to be perfect and complete, the terms of a contractual consideration cannot be contradicted or varied by parol. * * *" See *Kane v. Kane*, 134 Or 79, 291 P. 785; *Dorsey v. Tisby*, 192 Or 163, 234 P2d 557.

■ From the foregoing it is clear that plaintiff would not be allowed to show by evidence aliunde the deed that the granting of the option was a part of the consideration for the execution of the deed for the simple reason that in such a case the estate granted would be lessened in that the grantee in the deed would be vested with an estate inferior to that granted by the warranty deed itself.

■ Nor will the plaintiff be permitted to reform the deed on the ground of mutual mistake. It is axiomatic that one who seeks the reformation of an instrument

must establish by clear, satisfactory and convincing evidence that the instrument, as executed, was the result of a mutual mistake of the parties and that the one seeking reformation must be free from gross negligence. *Cohn et al. v. Duntley et al.*, 147 Or 176, 31 P2d 170; *Eley v. Miller*, 166 Or 80, 110 P2d 587; *L. B. Menefee Lumber Co. v. Gamble*, 119 Or 224, 242 P 628.

The evidence, without contradiction, discloses that in dividing the estate of their father the Weatherford brothers and sister met and made minutes of the meeting in which, among other things, the option was indicated. The minutes contain the following clause:

"The job of getting the deeds drawn, abstracts brought up to date and segregated, leases transferred, title to vehicles transferred, bills paid and monies collected, and the business of the partnership terminated should be done by Marion, and that it shall be completed as soon as possible."

As regards the execution of the deed in question, plaintiff testified as follows:

"Q. Mr. Weatherford, was this agreement carried out? * * *A. Yes sir.

"Q. Whose responsibility? A. It was mine, sir.

"Q. What was done? A. The deeds were drawn up in accordance with the agreement at the meeting.

"Q. By whom were the deeds drawn? A. The deeds were drawn up by Attorney Dan McLoughlin who is located in Condon. * * *"

In this connection H. R. Weatherford testified as follows:

"Q. * * * Now, while you were in Wallowa County, did you receive through the mails a deed to your share of the property? A. Yes.

"Q. You had nothing to do with the preparation of the deed? A. No.

* * * * *

"Q. Do you recall who sent you the deed? A. Marion.

"Q. Marion Weatherford? That is the plaintiff in this case? A. Yes.

"Q. I hand you defendants' exhibit A and ask you if that is the deed you received in the mail, from your brother, Marion? A. That is it.

"Q. And that is the deed which covers the Morrison place which is here in dispute, and the 1600 acres? A. That is right."

■ From the foregoing, it appears that the plaintiff, through his attorney, prepared the deed in question and mailed the same to the defendant H. R. Weatherford. There is not one iota of evidence that the deed was executed by mutual mistake or mistake at all. The deed was drawn and executed by plaintiff exactly as he wished it and if the option was omitted through inadvertence it was omitted through his own fault and negligence.

Reversed with instructions to dismiss the plaintiff's complaint, without costs in either court.

On Rehearing

Appeal from Circuit Court, Gilliam County.

E. H. Howell, Judge.

On respondent's petition for rehearing.

*Collier, Bernard, Bernard & Edwards,* of Portland, for the petition.

*Raley, Kilkenny & Raley,* of Pendleton, and *Wilber Henderson,* of Portland, contra.

Before LATOURETTE, Chief Justice, and LUSK, BRAND and TOOZE, Justices.

PETITION DENIED.

## TOOZE, J.

Plaintiff petitions for a rehearing, presenting numerous assignments of error directed to our original opinion, which was handed down May 20, 1953.

Plaintiff charges that we erred as follows:

"(a) In holding that the plaintiff would not be allowed to show by evidence aliunde the deed that the granting of the option was a part of the consideration for the execution of the deed.

"(b) In holding that to permit the plaintiff to show that the granting of the option was a part of the consideration for the execution of the deed would vest in the grantee an estate inferior to that granted by the warranty deed itself.

"(c) In failing to hold that the agreement of August 31, 1948, including the granting of the option to the plaintiff, and the warranty deed dated October 26, 1948, were all part of the same transaction, and in giving unwarranted effect to the fact that the deed was dated subsequent to the agreement.

"(d) In holding that there was not evidence that the deed was executed by mutual mistake or mistake at all, and in not holding that the deed was executed by mutual mistake."

It is unnecessary for us to again review the evidence in the case, because all the essential facts are set forth in our former opinion.

We have carefully re-examined the entire record in the case and are satisfied that our ultimate conclusions based thereon, and as expressed in our opinion, are correct.

■ We there said: "There is not one iota of evidence that the deed was executed by mutual mistake *or mistake at all.*" (Italics ours.) We were correct in saying there was no evidence of mutual mistake of fact. However, the record does disclose that the mistake, if any, was a mistake as to the legal effect of the warranty deed which was executed.

Assuming, without deciding, that the option agreement was sufficiently definite and certain to be the basis of a decree for specific performance, we are met with the question whether under the record in this case reformation of the deed and specific performance thereof, as reformed, were permissible.

■ Plaintiff strongly urges that the effect of our holding is to deny relief in all cases for a mistake of law, as distinguished from a mutual mistake of fact. We did not intend to so hold. Whatever may be the rule in other jurisdictions, the rule in this state is clearly stated in *Richmond v. Ogden Street Ry. Co.*, 44 Or 48, 54, 74 P 333, where this court, speaking through Justice ROBERT S. BEAN, said:

"3. One of the well-recognized and firmly established jurisdictions of a court of equity is to reform written contracts when there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake. If, therefore, a promissory note or other written agreement omits or contains terms or stipulations contrary to the agreement and intention of the parties, a court of equity will, under a proper showing, reform it so as to make it conform to the actual contract. *It is sometimes said that a mistake of law is no ground for equitable relief, but this rule only applies to cases where the contract, as entered into, speaks the true agreement*

*of the parties.* In such a case equity will not ordinarily reform the contract merely because one or both of the parties were mistaken as to its legal consequence, *but where, through a mistake of the parties or the draftsman, there is a failure to express the actual contract of the parties as contemplated, owing to the use of inapt words, or where the legal effect of the terms employed by the parties in putting their contract in writing results in an agreement different from the one really entered into, a court of equity will reform the writing so as to effectuate the intention of the parties, even though the mistake was one of law."* (Italics ours.)

Also see *Smith et al. v. Cram et al.,* 113 Or 313, 323, 230 P 812.

We agree with plaintiff that the execution of the deed was but a step in the entire transaction looking to the termination of the partnership and a winding up of its affairs. Plaintiff, in preparing the deeds and in handling the other matters incident to the winding up process, acted not only for himself but also as agent for his copartners, the defendant H. R. Weatherford included.

■ ·It is clear from the record that the parties did not intend at any time to waive the provisions of the alleged option agreement. The mistake, therefore, that was made was in preparing and executing a warranty deed, with the legal consequences following the execution and delivery thereof, as outlined in our former opinion. It was a mistake of law rather than a mutual mistake of fact.

If that was all there was in this case, and such had been pleaded, under the rules of law above set forth reformation and specific performance might have been justified, but such is not the situation. Apart from all that was said in our former opinion, there is another

legal obstacle to reformation and specific performance in this case that cannot be overcome.

The warranty deed conveying the Morrison place to the defendants H. R. Weatherford and Edith M. Weatherford, his wife, was duly executed by Frank M. Weatherford, the plaintiff Marion T. Weatherford, Barbara Athearn, and their respective spouses. The interest conveyed to the grantees is defined in the deed as follows:

"H. R. Weatherford and Edith M. Weatherford, husband and wife, as tenants by the entirety and not as tenants in community property."

The deed contained the following warranty clause:

"TO HAVE AND TO HOLD the above described and granted premises unto the said H. R. Weatherford and Edith M. Weatherford, husband and wife as tenants by the entirety and not as tenants in community property, and the grantors above named do covenant to and with the said grantees, their heirs and assigns, that they will, and their heirs, executors and administrators, shall warrant and defend the above granted premises, and every part and parcel thereof, against the acts and deeds of said grantors, and all persons·claiming by, from, through or under the said grantors, unto the said grantees, their heirs and assigns forever."

The defendant Edith M. Weatherford was not a party to the option agreement of August 31, 1948. She took no part whatever in the discussions between the parties relating thereto. In fact, the evidence discloses that she knew nothing about the agreement until the conveyance to her codefendants Edith M. Snell, D. L. Lemon, and Margaret S. Lemon. No estoppel was alleged against her in this case, nor was there the slightest bit of evidence in the record that would

support an estoppel. It follows, therefore, that defendant Edith M. Weatherford was in no way bound by the agreement entered into between her husband, his brothers, and his sister. She gave a valuable consideration for the interest conveyed to her in the Morrison place, in that she surrendered her inchoate right of dower in and to the other parcels of land owned by the partners when she joined in the deeds conveying title to the respective brothers and sister of the several parcels of land allotted to each.

■ The law in this state is aptly state by Justice RAND in *Woolsey v. Draper et al.,* 103 Or 103, 106, 201 P 730, 203 P 582, as follows:

"The rule is settled in this state that in suits for specific performance of contracts for the sale of land where the wife having a right of dower in the land is sued jointly with her husband upon a contract not binding upon her and the object of the suit is to divest her of her inchoate right of dower, the suit cannot be maintained against her *nor against her husband unless prior to the decree in the lower court* the plaintiff elects to accept the deed of the husband alone because as to her the contract lacks mutuality. *The court will not coerce the wife to perform a contract made by her husband alone, which she is not legally bound to perform:* Kuratli v. Jackson, 60 Or. 203 (118 Pac. 192, 1013, Ann. Cas. 1914A, 203, 38 L.R.A. (N.S.) 1195) ; Leo v. Deitz, 63 Or. 261 (127 Pac. 550)." (Italics ours.)

With much greater force is the rule applicable to a wife who owns the land with her husband as a tenant by entirety.

Land owned by a husband and wife as tenants by the entirety was involved in the case of *Marshall v. Wilson,* 175 Or 506, 154 P2d 547. The husband entered into an agreement for the sale of the land, and a suit

for specific performance of such agreement was instituted against both the husband and wife. Specific performance was decreed against the wife on the ground of an equitable estoppel. However, at page 517 of 175 Or, we said:

> "In the absence of any showing of authority upon Mr. Wilson's part to make such an agreement for his wife as well as for himself, or any ratification thereof by Mrs. Wilson, she would not be bound by the terms thereof; * * *."

Also see *Hayward v. Morrison et ux.,* 194 Or 335, 241 P2d 888.

There is nothing whatever in the record of this case, either by way of pleading or evidence, that would bring this case within any exception indicated by our prior holdings.

■ Inasmuch as defendant Edith M. Weatherford was not a party to the option agreement, nor in any way bound thereby, specific performance did not lie against her nor against her husband, H. R. Weatherford; and for the same reasons, the warranty deed by which she obtained title to the real property in question was not subject to reformation.

We adhere to the result reached in our former opinion. The petition for rehearing is denied.