Argued April 20, reversed and remanded
May 29, reconsideration denied June 26,
petition for review denied September 5, 1979

PRAGGASTIS, *Appellant,*
*v.*
SANDNER et ux, *Respondents.*
(No. 99382, CA 11198)

595 P2d 520

John Wiley Gould, Portland, argued the cause for appellant. With him on the brief were Mark S. Dodson

and Dezendorf, Spears, Lubersky & Campbell, Portland.

Sam F. Speerstra, Salem, argued the cause and filed the brief for respondents. With him on the brief was Rhoten, Rhoten & Speerstra.

Before Schwab, Chief Judge, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

This is a suit in equity for the reformation of a deed.[1] The trial court denied reformation and dismissed plaintiff's complaint. We reverse.

In May 1976, the parties[2] agreed to exchange real property. Defendant, desiring to consolidate his farm land, agreed to trade 200 acres to plaintiff for 356 acres.

The exchange agreement was reduced to writing and signed by plaintiff and defendant on May 22, 1976. The property that defendant was to receive was described generally as 400 acres with 44 acres excepted. Defendant retained ownership of the growing annual crops with the right to harvest them from the land which he was transferring. Plaintiff reserved the marketable oak and fir timber for a period of eighteen months on the land he was trading. The exchange agreement provided that plaintiff "use the existing roads as much as possible in logging area." Plaintiff was required to repair any perimeter fences damaged by the logging operation. The contract provided: "If closing cannot be completed by May 25, 1976, both parties agree that an additional 30 day period shall be allowed, * * *." Collateral to the written exchange agreement, plaintiff granted the defendant the right to graze his cattle on the 356 acres for a price per head. The exchange was not completed on May 25, 1976, or within the additional 30 days thereafter allowed.

---

[1] Plaintiff combined a suit in equity for reformation based on unilateral mistake with a cause of action at law for damages based on mutual mistake. In the amended complaint these were both entitled causes of action. They are alternative remedies and should have been denominated as "counts." The trial court found it unnecessary to consider the count for damages. We, likewise, find it unnecessary.

[2] Angie Sandner was joined as a party defendant because she is a grantee in the deed that the plaintiff seeks to reform. She did not participate in any of the negotiations between the parties but is, of course, bound by the result. She did not testify at the trial but is, of course, bound by the result. We use the term "defendant" to refer to Arthur Sandner.

Between May 1976 and October 1976, friction developed between the parties. Defendant claimed that plaintiff was clear-cutting the timber, making unnecessary logging roads and failing to repair the fences. Plaintiff claimed that defendant had not paid for the pasture and defendant had pestered plaintiff's employe concerning the logging.

In October 1976, the parties met in the office of an attorney to "straighten out" their problems. The attorney did not represent any of the parties and was selected because he represented a client who had a financial interest in the land. As a result of the meeting, the plaintiff had a mutual release form prepared:

"* * * J. Praggastis, * * * shall have reasonable and convenient access to and from fir timber for a period of 12 months. All timber shall be as defined by the exchange agreement of May 22, 1976. Proggastis [sic] shall hold Sandner et al free of any liabilities in this regard and Sandner et al agrees that he has not been in any way injured to date from any actions of the logging which has taken place to date."

The typist in the lawyer's office prepared deeds exchanging the property between plaintiff and defendant. The descriptions for the deeds were furnished by the parties. The deed from plaintiff to defendant contained a long, cumbersome description by metes and bounds. As prepared by the typist, the deed did not exclude the 44 acres but rather conveyed the entire 400 acres from plaintiff to defendants.

Defendant took the proposed deed and left the attorney's office to study it. He noted that it did not exclude the 44 acres. He returned to the office but did not notify anyone of the discrepancy between the descriptions in the exchange agreement and the deed. The mutual release and the exchange deeds were signed. The instruments were dated October 11, 1976.

A day or two after the execution of the exchange deeds, defendant put a chain across the entrance to the

[480]

44 acres and padlocked it. On October 14, 1976, plaintiff listed the 44 acres for sale with a realtor. Signs were placed on the property by the realtor advertising it for sale. The property was shown to prospective purchasers. The key to the gate was obtained from defendant's house by the real estate people. In December 1976, the realtor received an offer of $27,500 for the property.

Test holes were dug to obtain septic tank approval from the county. In the middle of January 1977, defendant brought one of the signs used to advertise the 44 acre tract into the realtor's office and informed him that he (Sandner) owned the property and that he did not want to sell it. This was the first notice that plaintiff had received that the exchange deed of October 11, 1976, did not exclude the 44 acres.

The first count of plaintiff's amended complaint alleged: (1) that on May 22, 1976, plaintiff and defendants entered into a written agreement for the exchange of real property and that said exchange was consummated on October 11, 1976; (2) that by unilateral mistake of the plaintiff the deed of conveyance to the defendants failed to exclude the 44 acres; and (3) "[t]hat the mistake in the legal description was known to defendants and defendants failed to disclose such fact to plaintiff." The amended complaint concluded with a prayer for reformation.

Defendants' answer alleged: (1) that on October 11, 1976, the parties cancelled the agreement of May 22, 1976; (2) that part of the consideration for the new agreement of October 11, 1976, was the transfer of the entire 400 acres to defendants "in exchange for a release of the plaintiff of any claim for damages defendants might have had by reason of plaintiff's use of and damage to the premises received by defendants from plaintiff."

The trial court found for defendants and denied reformation.

[481]

Plaintiff's first assignment of error contends that the trial court erred in failing to reform the deed to the antecedent agreement which expressed the parties' intentions. Plaintiff argues that he is entitled to have the exchange deed reformed by virtue of Restatement of Contracts § 505 (1932), which states:

"Except as stated in §§ 506, 509-511, if one party at the time of the execution of a written instrument knows not only that the writing does not accurately express the intention of the other party as to the terms to be embodied therein, but knows what that intention is, the latter can have the writing reformed so that it will express that intention."

It is plaintiff's position that defendant knew at the time of the execution of the deed (October 11, 1976), not only that the deed did not accurately express the intention of plaintiff as to the 44 acre tract, but also knew that plaintiff's intention was to have the 44 acres excluded from the deed and therefore plaintiff can have the deed reformed so that it will express that intention.

Defendant testified:

"Q. * * * Now, did he hand you a deed?

"A. At the time, it was—it give a description of the land. This agreement with a description of the land is what he was trading me. For—for a few minutes, I had a notion to object, throw it plum out and go home. Then I thought, well, I'd go out and read it, so I left the office.

"I went out and I read down through it and I studied this. 'Just what am I doing? Where is it going to leave me?'

"And after spending so much work on that place, several thousand dollars, I worked in the field plus liming and a lot of things, I'd lose all that if I went home and forgot it, so I studied this and read the papers and read what they said.

"I didn't go back to Jim and say, 'Wait a minute. You don't mean this and you don't mean that.' I didn't say that. I just went back in the office, signed the paper, never said a thing to my son or no one else. I

just went back in the office, signed the paper and went home.' "

" * * * * *"

"Q. Now, is that the property description that's on that deed that you examined when he gave you the other paper to sign that you've testified to?

"A. I'd have to do a lot of reading down to be sure and get it in my mind, but the one he gave me last had no exclusion whatever and that's the reason I signed it, because I would not have signed if it was the same as the other. With all the damage he's done, I would not have signed it, but this included it, and maybe I shouldn't say it but I was a little bit hot inside after what was said and when I read this I figured, 'Well, this is the best way to settle it. I'll forget it.' I signed and I went home."

The trial court's memorandum opinion in part is as follows:

"That brings us to the one unclear factual question in this case. Defendant remained silent, knowing that the deed conveyed a parcel excluded from the antecedent agreement. Such silence is ambiguous. It is susceptible to the construction that he knew of the mistake, knew Plaintiff intended to exclude the parcel, and attempted to take advantage of this scrivener's error. It is also, however, susceptible to the construction that he knew of the mistake but did not know it was a mistake; Defendant may have assumed the additional property was compensation for the release. If the latter construction is correct, the Court is not prepared to say Defendant's silence was unreasonable in the strained atmosphere of this meeting. It is not necessary that the Court agree Defendant was correct in so acting; it is necessary the Court accept the genuineness of Defendant's belief.

"Upon this paradigmatic factual issue there is no substitute for the Court's observation of witness' demeanor. Both Plaintiff and Defendant testified. Defendant's testimony was credible; we accept it. Upon this issue Plaintiff has failed to carry his burden of persuasion. Reformation is denied."

[483]

■■ The weight of the evidence does not support the trial court's finding that "[d]efendant may have assumed the additional property was compensation for the release." There is no evidence that the 44 acre tract was ever discussed by plaintiff and defendant at the meeting on October 11, 1976. No witness even suggests that the tract in question was mentioned. The defendant's theory of the case must follow his answer—that on October 11, 1976, the parties cancelled the agreement of May 22, 1976, and entered into a new agreement wherein plaintiff transferred to defendant the entire 400 acres in consideration of defendant's release of their claim for damages. The personal, individual intent of defendant could not form a new contract. *Kabil Developments Corp. v. Mignot,* 279 Or 151, 155, 566 P2d 505 (1977). "The law of contracts is not concerned with the parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts." *Kitzke v. Turnidge,* 209 Or 563, 573, 307 P2d 522 (1957).

We find that the facts in the case at bar clearly fall within the rule of Restatement of Contracts § 505 (1932).

■ Plaintiff is required to prove his request for reformation by clear and convincing evidence. *Ray v. Ricketts,* 235 Or 243, 283 P2d 52 (1963); *Weatherford v. Weatherford, et al,* 199 Or 290, 257 P2d 263, 260 P2d 1097 (1953). "Clear and convincing evidence means that the truth of the facts asserted is highly probable." *Supove et al v. Densmoor et ux,* 225 Or 365, 372, 358 P2d 510 (1961). Plaintiff has satisfied the requirement that he prove his case with a high degree of probability.

Plaintiff's prayer for reformation will be granted. We do not reach the other assignments of error.

Reversed and remanded.