Charles S. PFISTER and Cleo E. Pfister,
Appellants,

v.

Earl BROWN, Appellee.

No. 4069.

Supreme Court of Wyoming.

July 6, 1972.

Henry A. Burgess, of Burgess, Kennedy & Davis, Sheridan, for appellants.

William T. Schwartz, Casper, Thomas C. Morgan, of Morgan & Brorby, Gillette, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

McINTYRE, Chief Justice.

Action was brought in the district court of Campbell County for reformation of an instrument due to a scrivener's error. Judgment was rendered for the defendant and plaintiffs have appealed.

Because the evidence was such that the trial judge, as trier, had sufficient reason to find plaintiffs had not clearly shown a mutual mistake through a scrivener's error, we find it necessary to uphold the judgment of the district court. A brief review of the evidence and undisputed facts will demonstrate why we hold as we do.

In 1941 John E. Pfister and wife agreed to sell 12,227 acres of land to Earl Brown on an installment contract. The Pfisters were represented by attorney Bert Griggs of Buffalo, Wyoming, and Brown was represented by attorney Elwood Anderson of Gillette, Wyoming. The Memorandum of Agreement provided, with respect to some of the lands, that sellers were to reserve "all of the oil, gas and kindred minerals." With respect to other lands, the agreement

provided sellers were to reserve "one-half of the oil, gas and mineral rights."

The deed which conveyed the lands being sold reserved oil, gas and "kindred minerals," with no mention of oil, gas and "mineral rights." Appellants are contending, because a reservation of one-half of the oil, gas and "mineral rights" was expressed in the agreement with respect to some of the lands, while the deed reserved one-half of the oil, gas and "kindred minerals" in those particular lands, it tends to prove the term "kindred minerals" and the term "mineral rights" were used interchangeably and as if they meant the same thing, by the attorney who prepared the instruments.

Of course a lot depends on the habits of a particular lawyer who does the drafting. In reserving oil and gas, one attorney may refer simply to oil and gas; another may refer to oil, gas and hydrocarbons; another may refer to oil, gas, casinghead gasoline and petrochemicals; and still another might refer to oil, gas and kindred minerals.

It has been suggested to us that Bert Griggs, attorney for the sellers and scrivener of the instruments here involved, had a habit of referring to oil, gas and kindred minerals when dealing with a reservation of oil and gas. It is. suggested this practice was quite common with attorney Griggs.

Although the record seems to be silent on the matter, there is no evidence to negative the idea that Bert Griggs might reserve oil and gas by providing for a reservation of oil, gas and kindred minerals. It is a fact that oil and gas, and possibly coal, were the mineral substances of importance in the vicinity of the lands we are dealing with, at the time of Brown's purchase. The present controversy has arisen because of the possibility of uranium being contained in the lands; but uranium was not known as one of the valuable minerals existing in the vicinity of these lands at the time of their sale.

Plaintiffs are successors in interest to John E. Pfister and wife. In fact plaintiff Charles S. Pfister is a son of the sellers. In this controversy, plaintiffs are claiming the intent at time of sale was for the sellers to reserve all minerals in a portion of the land and one-half of all minerals in another portion. This would of course leave unexplained the need for any mention of oil or gas.

The defendant, on the other hand, testified at the trial and denied that the intention was for reservations to apply to all minerals. There is no contention that uranium is a kindred mineral to oil or gas.

It may be important to note that one reference in the sales contract was to oil, gas and kindred minerals. The other reference was to oil, gas and mineral rights. In the deed, both references were to oil, gas and kindred minerals. Thus, by odds of three to one, references were made to oil, gas and kindred minerals.

Moreover, the contract of sale was prepared by attorney Griggs in 1941. The deed was executed in 1947 and recorded in 1951. It probably had been prepared by Griggs. It was executed before an attorney who disclaimed authorship. This means the deed was last in point of time. It reserved oil, gas and kindred minerals, with no other minerals being mentioned.

As stated by appellants in their brief, they are contending on appeal that the trial court erred in finding there was insufficient proof of a mistake of the scrivener to justify reformation of the instrument. They rely on the proposition that where there is a meeting of minds between the parties and due to a mistake of the scrivener the instrument fails to properly express the previous agreement of the parties, courts will reform the instrument.

■ We have no quarrel with this principle. We simply say plaintiffs' proof of a mistake on the part of the scrivener was not sufficiently clear and conclusive to make a judgment in their favor mandatory as a matter of law.

■ This court, in the early case of Stoll v. Nagle, 15 Wyo. 86, 86 P. 26, 28, delineated limitations which apply to the right of reformation on account of mis-

take. The following statement from that case is pertinent:

"The mistake, however, must have been a mutual one. There must have been a meeting of minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory."[1]

Also, in Grieve v. Grieve, 15 Wyo. 358, 89 P. 569, 571, our court pointed out, when a mistake in a writing is claimed, the burden rests on the party claiming the mistake to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement entered into between the parties; that the mistake was mutual; and that it did not occur by or result from negligence of the party claiming it.[2]

The claim of appellants that sellers and the buyer had in mind a reservation of minerals in an all-inclusive sense when the sales contract was made, is contradicted by the fact that reservations were expressed in the sales contract under a heading set out in large capital letters with these words: RESERVATION OF OIL AND GAS RIGHTS. The instument was wholly typed and not on a printed form. Plaintiffs admitted at the trial that the contract was read by the parties; also, that the scrivener was attorney for the sellers.

We need not say evidence favorable to plaintiffs' contentions was wholly absent. However, in view of conflicts in evidence and the considerations we have mentioned, we will disregard plaintiffs' self-serving statements and accept as true the evidence favorable to defendant, together with all reasonable inferences which may be drawn therefrom.

■ This causes us to hold the trial court had reason to infer, as the sales contract heading expressly indicates, the intention was to reserve oil and gas rights. Also, the court had reason, despite plaintiffs' contentions to the contrary, to believe the parties intended what was clearly expressed in the deed which was executed, delivered, accepted and recorded many years before the initiation of plaintiffs' action. Moreover, inasmuch as the scrivener was sellers' own attorney, the court had reason to assume he expressed in the instruments drawn by him the intention of his clients.[3]

We agree plaintiffs have failed to show by clear and convincing evidence that a mistake was made by the scrivener or that there was a mutual mistake or that plaintiffs and their predecessors in title have been free from negligence, if there was a mistake.

Affirmed.

GUTHRIE, J., not participating.

1. To the same effect, see Heckman and Shell v. Wilson, Mont., 487 P.2d 1141, 1145; Mignot v. Parkhill, 247 Or. 465, 430 P.2d 1007, 1008; and Safeco Insurance Co. v. Dairyland Mutual Ins. Co., 74 Wash.2d 669, 446 P.2d 568, 570. Many cases hold the quantum of proof for reformation of a deed is more than a mere preponderance. Butler v. Butler, 80 N.M. 36, 450 P.2d 922, 924; Neal v. Green, 71 Wash.2d 40, 426 P.2d 485, 487; Davis v. Kleindienst, 64 Ariz. 251, 256, 169 P.2d 78, 81; and Moore v. Vandermast, Inc., 19 C.2d 94, 119 P.2d 129, 130.

2. For cases holding that the burden of proof is on the party claiming a mistake, see Isaac v. Isaac, Wyo., 406 P.2d 898, 900; Schnug v. Schnug, 203 Kan. 380, 454 P. 2d 474, 478; and Butler v. Butler, 80 N.M. 36, 450 P.2d 922, 924. For cases holding that a party seeking reformation of an instrument must himself be free from negligence, see Ware v. City of Tulsa, Okl., 312 P.2d 946, 950; Weatherford v. Weatherford, 199 Or. 290, 257 P.2d 263, 266, reh. den. 199 Or. 290, 260 P.2d 1097; and Naisbitt v. Hodges, 6 Utah 2d 116, 307 P.2d 620, 623.

3. When a deed is prepared by a person learned in the law, it may be assumed he sufficiently advised the parties to the deed (especially his clients) of the meaning of special provisions. Witzel v. Witzel, Wyo., 386 P.2d 103, 107.