974 F.2d 1345
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 CARL D. UNDERWOOD OIL & GAS, a Wyoming corporation,
Plaintiff-Appellant,
v.
PACIFIC ENTERPRISES OIL COMPANY, a California corporation,
Defendant-Appellee.
 No. 90-8111.
 United States Court of Appeals, Tenth Circuit.
 Sept. 8, 1992.
 
 Before HOLLOWAY* and McWILLIAMS, Senior Circuit Judges, and CAUTHRON,** District Judge.
 ORDER AND JUDGMENT***
 HOLLOWAY, Senior Circuit Judge.
 
 
 1
 This litigation arises from the sale in 1988 by a predecessor of Pacific Enterprises Oil Company (USA) of an interest in several oil and gas properties in Wyoming. The purchaser, Carl D. Underwood Oil & Gas, sued Pacific in the District of Wyoming alleging, inter alia, misrepresentation and/or fraud and conversion as well as seeking a declaratory judgment that the conveyance document correctly described the properties that the parties intended to include in the sale agreement. Pacific counterclaimed, alleging that as a result of a mutual mistake the conveyance document erroneously included more properties than the parties intended to include in the transaction. Pacific prevailed by summary judgment on the reformation claim and at trial on the remaining claims and Underwood appealed.
 
 
 2
 The issues presented on appeal include: (1) whether the district court properly granted summary judgment in favor of Pacific on the counterclaim, thereby reforming the conveyance document on the ground that it contained a scrivener's error; (2) whether Underwood Oil & Gas presented sufficient evidence of conversion to withstand a directed verdict; (3) whether the district court's instructions correctly stated Wyoming law of misrespresentation; and (4) whether pretrial or evidentiary rulings of the trial judge were error. We affirm in part, but reverse the entry of summary judgment in favor of Pacific on the reformation claim and remand for trial of that claim.
 
 
 3
 * In late 1987, Terra Resources, Inc., predecessor of Pacific, began trying to sell its interest in several oil and gas properties in Weston County, Wyoming. An invitation to bid mailed to potential buyers in December 1987 offered for sale Terra Resources' interest in properties that included two oil and gas fields--the East Fiddler Creek Unit and the West Fiddler Creek Unit--and three wells on an adjacent property called the Egert Lease.[1]
 
 
 4
 In mid-February 1988, about two months after the bid package was distributed, the president of Terra Resources told Carl Underwood, the president and chief executive officer of Underwood Oil & Gas, that the Fiddler Creek units were on the market. Following the conversation, Underwood began negotiating with Terra Resources to buy the properties. In March 1988, the parties reached an agreement under which Terra Resources was to assign an interest in the properties to Underwood Oil & Gas in exchange for $80,000. This controversy arose in part because of a disagreement between the parties about what portion of the Terra Resources interest in the Egert Lease the parties intended to include in the transaction.
 
 
 5
 The property history in the bid package explained that of the several wells within the Egert Lease, the Terra Resources interest in just three--well Numbers 6, 7, and, 8--was included in the sale offering.[2] However, two documents generated during the negotiations between the parties did not limit the interest being sold to the three wells. One of the documents, a letter agreement prepared by the seller, stated that Underwood Oil & Gas had offered to purchase "all Terra's right, title and interest in and to the Egert Lease" and the two units. Appellee's Supplemental App. at 166 (emphasis added). The other document, the "Assignment, Bill of Sale and Conveyance," specifically conveyed to Underwood Oil & Gas not only Terra Resources' interest in well Numbers 6, 7, and 8, but also its interest in the remainder of the Egert Lease, including two other wells located within an adjacent field called the Townsend Newcastle Sand Unit. See Appellant's App. (Exhibits) Plaintiff's Ex. 3.
 
 
 6
 Another aspect of this litigation involves Terra Resources' representations to Underwood Oil & Gas about the condition of the Fiddler Creek units. For a number of years, Terra Resources used a waterflood method of recovering oil and gas in the East and West Fiddler Creek units. Terra Resources stopped the waterflood operation in 1986. At the time it offered the properties for sale, Terra Resources faced a November 1989 deadline imposed by the Wyoming Oil and Gas Conservation Commission for testing many of the injection wells in the units.
 
 II
 
 7
 In November 1989, Underwood Oil & Gas sued Pacific Enterprises Oil Co. (USA) in the District of Wyoming, in part seeking a declaratory judgment that the conveyance document correctly reflected the parties' agreement. Underwood Oil & Gas asserted other claims, including misrepresentation and/or fraud as well as conversion. As the basis of its fraud claim, Underwood Oil & Gas contended that prior to the sale Terra Resources made numerous misrepresentations to Carl Underwood about the properties, including false representations about the mechanical and physical condition of the injection wells in the units, about the potential liability for testing, plugging, and abandoning wells, and about the feasibility of restarting the idle waterflood recovery operation. Underlying the conversion claim was Underwood Oil & Gas' contention that prior to the sale Terra Resources removed large amounts of unit-owned property from the units. Pacific counterclaimed, seeking in part a declaratory judgment that the parties intended to include just well numbers 6, 7, and 8 in the conveyance to Underwood.
 
 
 8
 Ruling on cross-motions for summary judgment in June 1990, the district court resolved the issues involving the conveyance document by granting summary judgment in favor of Pacific. The district court held that the conveyance of the wells within the Townsend Unit had been a mutual mistake, and consequently reformed the conveyance document to reflect that Pacific had not conveyed its interest in the Townsend Unit wells. Appellant's App. (Pleadings) tabs 5, 6.
 
 
 9
 Underwood Oil & Gas' remaining claims of conversion and misrepresentation/fraud were tried to a jury in October 1990. During trial, the district court granted Pacific's motion for a directed verdict on the conversion claim. The jury returned a verdict in favor of Pacific on the plaintiff's misrepresentation claim.
 
 III
 
 10
 We consider first whether, as a result of a scrivener's error, Pacific was entitled to summary judgment reforming the document that conveyed its interests in the Egert Lease to Underwood Oil & Gas. In reviewing a district court's order granting summary judgment we apply the same standard that the district court applied under Rule 56(c) of the Federal Rules of Civil Procedure. E.g., Considine v. Board of County Comm'rs, 910 F.2d 695, 699 & n. 5 (10th Cir.1990). We must affirm if the record, viewed in the light most favorable to Underwood Oil & Gas, shows that there are no genuine issues of material fact and that Pacific was entitled to reformation as a matter of law.
 
 
 11
 Pacific contended that it was entitled to reformation to correct a scrivener's error in the conveyance that mistakenly conveyed to Underwood Oil & Gas its interest in the properties located within the Townsend Unit. Agreeing, the district court granted summary judgment in favor of Pacific and reformed the conveyance document so that Pacific retained ownership of its interest in the Townsend Unit properties.
 
 
 12
 The Wyoming courts will reform a writing that, because of a mutual mistake, does not reflect the actual agreement of the parties. E.g., Rainbow Oil Co. v. Christmann, 656 P.2d 538, 544 (Wyo.1982); Pfister v. Brown, 498 P.2d 1243, 1244-45 (Wyo.1972). The party claiming the mistake bears the burden of establishing that "there was an agreement in which the parties had a meeting of the minds which was entered into prior to the written agreement, and that as a result of mutual mistake or fraud the written contract differs from the original agreement and omits certain agreed-to terms." Rainbow Oil Co., 656 P.2d at 544; see also, e.g., Pfister, 498 P.2d at 1245 (describing rules of mutual mistake); Stoll v. Nagle, 86 P. 26, 28 (Wyo.1906) (same).
 
 
 13
 A court may reform an instrument, then, because of a mistake only if the parties reached an agreement that is not reflected in the final writing. E.g., Rainbow Oil Co., 656 P.2d at 544; Pfister, 498 P.2d at 1244-45. It follows that the existence of a genuine issue of fact as to whether the parties reached an agreement that is not contained in a later writing would make summary judgment improper. In determining whether the parties reached an agreement not reflected in the conveyance document, the court was permitted to consider extrinsic evidence. See Stoll, 86 P. at 28-29 (reviewing extrinsic evidence received to resolve reformation claim based upon mistake); see also 3 Arthur L. Corbin, Corbin on Contracts § 540, at 89 (1960) (explaining in reformation of scrivener's error, parol evidence rule does not bar proof of mistakenly omitted terms by extrinsic evidence).
 
 
 14
 Based on review of the evidentiary materials, the district court upheld Pacific's contention that it did not intend to sell its interests in properties within the Townsend Unit. Appellant's App. (Pleadings) tab 5, at 15. Further, the trial judge held that Carl Underwood did not know what properties he was buying. Id. The court concluded that "if one party had no particular intent as to the terms of a contract, then the intent of the party that had an intent governs." Id.[3] From this factual premise, the district court determined that summary judgment for reformation should be granted. The court cited the Wyoming decisions in Pfister v. Brown, 498 P.2d 1243 (Wyo.1972), and Stoll v. Nagle, 86 P. 26 (Wyo.1906), inter alia.
 
 
 15
 We cannot agree that on this summary judgment record and the showing made by Pacific as the moving party, reformation by summary judgment was proper. The order pointed to lack of intent by Underwood as to the properties he was buying. The Wyoming Court has made clear the requirements for such reformation relief being granted on the basis of mutual mistake. In Pfister, where the Court held that proof of mistake on the part of the scrivener was not sufficiently clear and conclusive to make a judgment mandatory in favor of the party seeking reformation, the court stated:
 
 
 16
 This court, in the early case of Stoll v. Nagle, 15 Wyo. 86, 86 P. 26, 28, delineated limitations which apply to the right of reformation on account of mistake. The following statement from that case is pertinent:
 
 
 17
 'The mistake, however, must have been a mutual one. There must have been a meeting of minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory.'
 
 
 18
 Also, in Grieve v. Grieve, 15 Wyo. 358, 89 P. 569, 571, our court pointed out, when a mistake in a writing is claimed, the burden rests on the party claiming the mistake to establish by evidence that is clear, satisfactory and convincing that the contract as written does not contain the agreement entered into between the parties; that the mistake was mutual; and that it did not occur by or result from negligence of the party claiming it.
 
 
 19
 498 P.2d at 1244-45 (emphasis added) (footnotes omitted).
 
 
 20
 Here, it appears there was not a clear showing of mutual mistake coming within this doctrine for reformation relief. Instead the district judge found only that there was uncertainty or lack of intent on the part of Underwood. On the present summary judgment record we must hold that the summary judgment for reformation was not proper in light of the clear requirements of Wyoming law; thus Pacific has not demonstrated one critical part of the required showing for summary judgment--that it was entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c) (summary judgment to be rendered "if the pleadings, depositions ... together with the affidavits ... show that there was no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").
 
 
 21
 We also feel that the additional requirement for summary judgment--the absence of a genuine issue as to any material fact--was not satisfied here. We are persuaded that the letter agreement, the conveyance document, and the depositions here show a genuine factual dispute about the agreement of Terra Resources (the predecessor of Pacific) and Underwood Oil & Gas. Pacific did present substantial extrinsic evidence (the bid package and an affidavit of a district operations manager) which indicated that Terra did not intend to sell its interest in the Townsend Unit properties. In addition, Pacific presented evidence that Carl Underwood's conduct (Underwood's delay of nearly a year before claiming an interest in the Egert Lease) was consistent with Pacific's mistake theory. Underwood, on the other hand, points to other evidence (the conveyance and the letter agreement) in support of his position on the transaction. See 3 Corbin § 615, at 745-46 (explaining "document itself ... has weight as evidence of mutual agreement"). A determination of the issue whether the conveyance as worded was a mistake will require weighing such conflicting evidence under the Wyoming standard which demands clear and convincing proof to establish the right to reformation for mutual mistake. See Crompton v. Bruce, 669 P.2d 930, 934 (Wyo.1983). The reformation claim must therefore be remanded for trial.[4]
 
 
 22
 Finally, Underwood Oil & Gas urges us to direct a grant of summary judgment in its favor on the basis of the language of the conveyance. However, if there was a mistake in the terms of the conveyance, a summary judgment based on the instrument would be improper. As we have noted, the summary judgment record shows a genuine issue of material fact about the alleged mistake. Hence a summary judgment for Underwood based on the language of the conveyance would also be improper.
 
 IV
 
 23
 Next we address whether the district court erred in granting a directed verdict for Pacific on the conversion count. A directed verdict is appropriate under Rule 50(a) of the Federal Rules of Civil Procedure "only if the evidence, viewed in the light most favorable to the nonmoving party, 'points but one way and is susceptible to no reasonable inferences supporting' the nonmoving party." Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.1991) (quoting Zimmerman v. First Fed. Sav. & Loan Ass'n, 848 F.2d 1047, 1051 (10th Cir.1988)), cert. denied, 112 S.Ct. 196 (1991); see also, e.g., Martin v. Unit Rig & Equip. Co., 715 F.2d 1434, 1438 (10th Cir.1983) (same).
 
 
 24
 At the close of Underwood Oil & Gas' evidence at trial, the district court granted a directed verdict in favor of Pacific on Underwood Oil & Gas' cause of action for conversion. The trial judge explained in general terms that he viewed the evidence of conversion insufficient because Underwood Oil & Gas had proved with specificity neither the items supposedly converted nor their value.[5] In a conversion action under Wyoming law a plaintiff is required to establish
 
 
 25
 that (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.
 
 
 26
 Frost v. Eggeman, 638 P.2d 141, 144 (Wyo.1981).
 
 
 27
 We are satisfied that the directed verdict was not in error. The proof of Underwood was indeed "sketchy" and insufficient to support a judgment for conversion.
 
 V
 
 28
 Underwood Oil & Gas argues that a new trial is warranted on its misrepresentation claim because the district court erred in refusing to give two proposed jury instructions. Both of the rejected instructions addressed the general rule that a party seeking to recover in tort for misrepresentation must show a justifiable reliance on the representation. See, e.g., Garner v. Hickman, 709 P.2d 407, 410 (Wyo.1985).[6]
 
 
 29
 Addressing the reliance element of the alleged misrepresentation, the district court instructed the jurors as follows:
 
 
 30
 A party claiming to have been defrauded by a false representation or concealment must not only have acted in reliance thereof, but must have been justified in such reliance, that is, the situation must have been such as to make it reasonable for him in the light of the circumstances and his intelligence, experience and knowledge, to accept the representations without making an independent inquiry or investigation.
 
 
 31
 In the absence of information such as would cause a reasonable person to inquire further, the plaintiff would be entitled to rely upon the defendant's factual representations.
 
 
 32
 You are further instructed that with respect to the element of reliance a plaintiff cannot align himself to observe the readily available facts and place reliance upon such false representations without making a diligent inquiry of these facts.
 
 
 33
 Appellant's App.Sec. III, Vol. XII, at 106-07.
 
 
 34
 Underwood Oil & Gas argues not that the instructions misstated Wyoming law, but rather that the statement of Wyoming law was incomplete in view of the trial evidence. Underwood says that the district court erred in refusing an instruction it proposed concerning a plaintiff's duty to investigate representations. The requested instruction, Number 10, read:
 
 
 35
 You are instructed that where one party to a transaction induces the other party to enter into it by willful misrepresentation, he cannot escape liability for his fraud by showing that the other party could have investigated the representations made and would have found them to be untrue.
 
 
 36
 Brief of Appellant at 33-34.[7] Underwood Oil & Gas argues that the requested instruction was necessary in view of Pacific's contention at trial, as summarized in the jury instructions, that "it was the responsibility of Underwood Oil & Gas to initiate and carry out its own investigation" of the property. Appellant's App.Sec. III, Vol. XII, at 95-96.
 
 
 37
 Proposed instruction Number 10 was a correct statement of Wyoming law to the extent that a plaintiff is not, as a general rule, required to investigate representations in order to show justifiable reliance. The district court's instructions on the point stated the rule in terms of when a plaintiff has a duty to investigate. In short, the court's instructions informed the jury that Underwood Oil & Gas "was entitled to rely upon the defendant's factual representations" absent "information such as would cause a reasonable person to inquire further." Appellant's App.Sec. III, Vol. XII, at 106-07. We "will find reversible error in a trial court's jury instructions only if we have substantial doubt whether the instructions, taken together, properly guided the jury in its deliberations." Mitchell v. Mobil Oil Corp., 896 F.2d 463, 468 (10th Cir.), cert. denied, 111 S.Ct. 252 (1990). We conclude that the court did not err in refusing to give proposed instruction Number 10 because the instructions as given adequately addressed Wyoming law concerning the circumstances under which investigation is necessary in order to make reliance justified. See White v. Ogburn, 528 P.2d 1167, 1171 (Wyo.1974) ("We do not say that plaintiffs could not rely upon representations made to them by the defendants, but they could not blind themselves to observe the readily available facts and place reliance upon such alleged misrepresentations without making a diligent inquiry of these facts").
 
 
 38
 Underwood Oil & Gas next contends that the district court erred in refusing to give its requested supplemental instruction Number 11, which stated:
 
 
 39
 Except as stated in the following paragraph, one who makes a fraudulent misrepresentation or fraudulently conceals information is not liable to another whose decision to engage in the transaction is a result of an independent investigation rather than reliance upon the truth of the misrepresentation.
 
 
 40
 The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if the maker, by false statements or otherwise, intentionally prevents the investigation from being effective.
 
 
 41
 Brief of Appellant at 34.
 
 
 42
 The second paragraph of proposed instruction Number 11 stated an exception to the requirement that a plaintiff show reliance upon the alleged misrepresentation. The second part of the requested instruction was virtually identical to the Restatement (Second) of Torts § 547(2), which generally provides that even if a plaintiff relied upon "his own investigation, the maker of the fraudulent misrepresentation may still be liable if he intentionally frustrates the investigation." Restatement (Second) of Torts § 547 cmt. b (1977).[8] Underwood Oil & Gas contends the district court erred in refusing to give the instruction on the basis of its view that the evidence showed that Pacific intentionally made the investigation ineffective.
 
 
 43
 Assuming that the requested instruction, supplemental instruction Number 11, correctly states Wyoming law, Underwood Oil & Gas has not demonstrated that the trial evidence required the added instruction. Underwood Oil & Gas has not pointed to trial evidence that Carl Underwood relied upon his own independent investigation, and that it was thwarted by acts of Terra which made it ineffective. See, e.g., H & W Enterprises, Inc. v. Ellis, 467 So.2d 790, 792 (Fla.Dist.Ct.App.1985) (applying § 547(2)). To the contrary, as we read the argument in its brief, Underwood Oil & Gas' theory at trial was that Carl Underwood relied directly on alleged misrepresentations of Terra. The general rule on liability for fraudulent representations was adequately covered by the charge.[9] Because we conclude that Underwood Oil & Gas has not met its burden of showing that an additional special instruction on § 547(2) was required by the evidence at trial, we find no error in the district court's refusal to give it.
 
 VI
 
 44
 Finally, we consider Underwood Oil & Gas' argument that the district court committed reversible error in evidentiary and discovery rulings.
 
 
 45
 * Underwood Oil & Gas contends the district court erred in refusing to admit at trial two of its exhibits. The exhibits were letters exchanged between the State of Wyoming and Pacific on the issue of Pacific's continuing obligation to test, repair, or plug wells on the oil and gas properties that it sold to Underwood Oil & Gas. In one of the letters, Pacific proposed a compromise. In a pretrial ruling, the district court excluded the exhibits on the basis of Rule 408 of the Federal Rules of Evidence as evidence of compromise negotiations. Underwood Oil & Gas argues that the letters were admissible for the limited purpose of showing Pacific's intent to commit fraud.
 
 
 46
 Underwood Oil & Gas asserts that Rule 408 did not necessarily preclude admission of the letters on the limited issue of Pacific's intent to commit fraud. See Wegerer v. First Commodity Corp. of Boston, 744 F.2d 719, 724 (10th Cir.1984); see also, e.g., Fed.R.Evid. 408 (excluding evidence of compromise negotiations only if offered to prove "liability for or invalidity of the claim or its amount"); Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1363 (10th Cir.1987) (same). Underwood Oil & Gas has not, however, explained how the letters tended to show fraud. Accordingly, we affirm the ruling excluding the evidence. See id.
 
 B
 
 47
 Underwood Oil & Gas next argues that the district court erred in denying its motion to reopen depositions. The plaintiff contends that it wanted to attempt (1) to develop evidence of other frauds by Pacific involving the dumping of hazardous wastes on land not the subject of this action, and (2) to determine whether Pacific had dumped hazardous wastes in the Fiddler Units. The magistrate denied the motion, and the district court affirmed.
 
 
 48
 We note that a district court has wide discretion in its regulation of pretrial matters, including whether to reopen discovery. Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir.1990). In our view, there was "little likelihood" that the requested discovery would have lead to relevant discovery. Id. (quoting Smith v. United States, 834 F.2d 166, 169 (10th Cir.1987)). We are not convinced the court abused its discretion in denying the motion to reopen discovery.
 
 
 49
 Accordingly, the judgment is AFFIRMED in all respects except as to the summary judgment denying reformation for alleged mutual mistake; as to that reformation claim, the summary judgment is VACATED and the case is remanded for further proceedings in accord with this opinion.
 
 
 
 *
 Subsequent to argument and submission, Judge Holloway took senior status effective May 31, 1992
 
 
 **
 The Honorable Robin J. Cauthron, United States District Judge for the Western District of Oklahoma, sitting by designation
 
 
 ***
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The bid solicitation package identified Terra Resources as the operator, as well as a working interest and revenue interest owner, of both units and the Egert Lease
 
 
 [2]
 The relevant part of the description of the portion of the Egert Lease being offered for sale stated:
 The Egert Lease is located in Fiddler Creek Field, adjacent to but not within the East Fiddler Creek Unit. Production from the lease commenced in 1949. A total of 10 wells have been drilled but due to inclusion of part of the lease into the Townsend Unit, only three remain on a lease basis and are included in this sale. These wells, the numbers 6,[ ]7, and 8 were all drilled in 1960 and are located in the E/2, E/2 of Section 19, T46N, R64W.
 The Egert lease has not had a water injection program of its own but has benefitted from the East Fiddler Creek Unit waterflood. When this flood was shut down in 1986 due to declining oil prices, Egert Lease production fell rapidly.... One well on the lease currently produces while the remaining two are inactive.
 Appellee's Supplemental App. at 176 (emphasis added).
 
 
 [3]
 The district judge's reasoning as to how the parties had an agreement on Pacific's terms follows:
 The Court finds that if Carl Underwood had formed any intent at all about the interest he was acquiring in the Egert Lease, it was that he would gain an interest in one or two wells. At best, Underwood lacked intent as to what interest in the Egert Lease he was acquiring; he simply intended to take the "sweetheart deal" offered to him by Pacific, no matter what it was. The Court holds that, if one party had no particular intent as to the terms of a contract, then the intent of the party that had an intent governs. Therefore, whether Underwood only intended to acquire one or two wells on the Egert Lease, or whether Underwood didn't really know what he was getting, there was a meeting of the minds which was not expressed by the instrument written, and the conveyance of the Townsend Unit wells was a mutual mistake.
 Appellant's App. (Pleadings) tab 5, at 15 (emphasis added).
 
 
 [4]
 We have noted that in granting summary judgment to Pacific on the mutual mistake claim, the district court also granted summary judgment in favor of Pacific on Underwood Oil & Gas' claims for slander of title and tortious interference with a contract. Appellants' App. (Pleadings) tab 5, at 15. Although these rulings were interrelated, Underwood Oil & Gas' appeal seeks relief solely from the court's ruling on the mutual mistake issue. Accordingly, we treat only the reformation issue which we remand
 
 
 [5]
 In announcing his ruling directing a defendant's verdict on the conversion claim, the trial judge said:
 With regard to the conversion, I think that the plaintiff's evidence of conversion is sketchy at the best and nonexistent at the worst. I think it's all based on inference and deduction. You're taking two statements and one of [$]844,000 and then say--another statement that there's [$]500,000 left and say, therefore, the [$]300,000 difference is missing. I think there is a little bit--a little bit of evidence that shows that there were some truckloads of material hauled out. It didn't say what material, and the only evidence I know is that the man in charge of that operation said that they were instructed to haul Terra's property, not the unit property, out. So, therefore, I don't think that the conversion claim stands up and I'm going to grant a directed verdict as to that.
 Appellant's App. Sec. III, Vol. IX, at 187.
 
 
 [6]
 As the elements of a cause of action for fraud, the Wyoming courts require that a plaintiff establish that: (1) the defendant made a false representation which was "relied upon by the plaintiff to his damage"; (2) the asserted false representation was "made to induce action"; and (3) the plaintiff reasonably believed the representation to have been true. Duffy v. Brown, 708 P.2d 433, 437 (Wyo.1985); see also, e.g., Rocky Mountain Helicopters, Inc. v. Air Freight, Inc., 773 P.2d 911, 919 (Wyo.1989) (listing elements of fraud)
 Under the view that Wyoming follows, courts generally require evidence that a plaintiff investigated the representations "only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 108, at 752 (5th ed. 1984) (footnote omitted); see White v. Ogburn, 528 P.2d 1167, 1171 (Wyo.1974) (denying recovery for alleged misrepresentations in advertising brochure about ranch because plaintiffs, including experienced rancher, observed problems but made no investigation).
 
 
 [7]
 The requested instruction generally follows the language of the Restatement (Second) of Torts § 540. The section states:
 § 540. Duty to Investigate
 The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.
 Restatement (Second) of Torts § 540 (1977).
 
 
 [8]
 The relevant part of the section states:
 The fact that the recipient of a fraudulent misrepresentation is relying upon his own investigation does not relieve the maker from liability if he by false statements or otherwise intentionally prevents the investigation from being effective.
 Restatement (Second) of Torts § 547(2) (1977).
 
 
 [9]
 We note that the trial judge instructed in part:
 When misrepresentations are made to the public as to a public office or commission, for the purposes of influencing action thereon, such misrepresentations are fraudulent as to any individual acting upon the misrepresentations and sustaining an injury thereby the same as if the misrepresentations had been made directly.
 Appellant's App. Sec. III, Vol. XII, at 108. This instruction adequately covered the theory of Underwood Oil & Gas concerning misrepresentations to the commission and charged that any such misrepresentations should be treated as if made directly to Underwood.